# Lance's Appeal.

1. The right of the Commonwealth to take private property on compensation made or to authorize it to be taken, is by reason of her right of eminent domain, and can never be exercised but for a public purpose supposed and intended to benefit the public.

2. The power comes from the natural principle that private convenience must yield to public wants.

3. If it were not for the public interest this exercise of power would be confiscation and usurpation.

4. After the right has been exercised, the use of the property must be held in accordance with and for the purposes which justified its taking.

5. A railroad company cannot erect buildings, &c., not necessarily connected with the use of their franchise, within the limits of their right of way.

6. The exercise of the right of eminent domain is in derogation of private

right, and the authority must be strictly construed. What is not granted is not to be exercised.

7. The view for a lateral railroad is granted and the damages assessed on the plan proposed in the promoter's petition; he cannot adopt any other.

June 29th 1866, at Wilkesbarre. Before WOODWARD, C. J., THOMPSON, STRONG, READ and AGNEW, JJ.

Appeal from the decree of the Court of Common Pleas of *Luzerne county*. In Equity.

This was a bill brought, March 24th 1863, by Jameson Harvey against William Lance.

The complainant alleged that he was seised in fee of a certain tract of land in Plymouth township, Luzerne county, containing about 320 acres, that the defendant was the lessee of one Freeman Thomas and had claimed and exercised the rights and privileges of Thomas on the complainant's land before mentioned; that Thomas, under the Act of May 5th 1832, on the 6th of August 1834, presented a petition to the Court of Common Pleas of Luzerne county, praying permission and authority to make a railroad, commencing at his tunnel or mouth of his coal-bed and to intersect the Slackwater Navigation, a short distance from the Nanticoke dam, crossing intervening lands of the complainant, the railroad to be 20 feet in width and passing by various courses and distances set out in the petition, " to low-water mark on said Slackwater Navigation, the said railroad to be made on an inclined plane, located upon the ground, except the last 17 perches, which is to be raised from the ground on stilts;" that by proceedings in said court, Thomas acquired the right of way for the purposes of a lateral railroad over the complainant's land described in the petition, and immediately thereafter constructed the said lateral railroad over said land in the manner set forth in the petition and at an inclined plane, descending from the tunnel to the dumphouse about 7 feet, occupying complainant's land for about 65 perches of the breadth of 20 feet; that Thomas, and Lance, the defendant, as his lessee, held possession of the land for the purposes of a lateral railroad until about the year 1856, and kept the road in repair; that since that year the road had been disused and suffered to remain out of repair for two years and more, and continued to be disused, &c., and thereby the right of way or other privilege had ceased and reverted to complainant. He further alleged that the defendant, without having acquired any right by law and in violation of law, had constructed on the complainant's land before described a house known as a coal-schute, the main structure being 64 feet long and 37 feet wide, and a smaller building attached, being 16 feet long and 14 feet wide, the whole being 50 feet high, partly within the breadth of the 20 feet of the complainant's land formerly occupied by the lateral railroad, but the greater part being outside of the 20 feet; that

5 P. F. SMITH—2

Lance, without permission of the complainant, made a railroad connecting the said coal-schute with his tunnel or mouth of his coal-bed, a portion of the building being on complainant's land, partly on the 20 feet formerly used for the lateral railroad and partly without said 20 feet, beginning at a point on the line between the complainant's lands and those of The West Branch Coal Company and by various courses and distances mentioned in the bill to a point at the commencement of a platform, and by an irregular curvature upon said platform and trestles crossing above the public wagon-road and the Lackawanna and Bloomsburg Railroad to the north-west corner of the coal-schute; that said railroad was constructed on an ascending grade, being at the point where it commenced to run over the complainant's land at the line of The West Branch Coal Company, eighteen-hundredths of a foot above the grade of the old lateral railroad and rising to the height of about 18 feet above the grade of said old lateral railroad where it connected with the coal-schute and at the same point about 26½ feet above the grade of the Lackawanna and Bloomsburg Railroad, the ascent between the two points being gradual and the distance over the complainant's land being about 900 feet, all being exhibited in a draft attached to the bill. The complainant further alleged, that Lance was continuing to use the said railroad and schute in carrying on the business of mining and shipping coal without permission of the complainant, &c., and in the prosecution of such business was constantly depositing on the complainant's land large quantities of coal, coal-dirt, culm, slate and rubbish in disregard of the complainant's rights and of the law, notwithstanding he had frequently requested Lance to desist. The complainant prayed for an injunction to restrain Lance from the occupation and use of his lands; to compel him to remove the erections, constructions and deposits and to make compensation for the injuries done complainant, &c.; and for further relief.

The defendant filed an answer in which he averred, that Thomas, previously to May 1832, owned in fee a tract of land on which was a coal-mine, lying in said Plymouth township near the North Branch Canal; that Thomas having driven a tunnel from the front of the mountain through solid rock about 100 yards until he struck a vein in his coal-mine, was desirous to send his coal to market by boats on the North Branch Canal, and that to do this it became necessary to cross a strip of Harvey's land; that under the Lateral Railroad Law of 1832, he constructed a lateral railroad from his tunnel, substantially as set out in the bill; that when Thomas commenced transporting coal on the lateral railroad to load in boats at its termination in the Nanticoke pool, there was at the said termination water sufficient to make a safe and easy navigation, with a good and sufficient towing-path from the schute

[Lance's Appeal.]

of Thomas to the outlet lock of the pool; that Harvey afterwards built a wharf a few rods from Thomas's schute into said pool, which obstructed the flow of the water and filled up the pool around the schute and hindered its navigation; that about 1852 the defendant became sole tenant of Thomas, and found everything in so dilapidated a condition as to be practically useless; that he caused it to be levelled to nearly an even grade, put it otherwise in suitable repair for a light business and continued to use the lateral railroad until 1856, about which time he sold all his right in the lease to the Mammoth Vein Coal Company, who took possession of the lateral railroad and premises and used them until about August 1st 1858. The defendant further averred that in pursuance of an act of incorporation passed about April 5th 1852, the Lackawanna and Bloomsburg Railroad Company laid out, constructed and used a railroad 60 feet wide, which passed over the complainant's land, crossing the lateral railroad as laid down on complainant's draft and running both above and below the lateral railroad entirely across the land of the complainant; that the grade of the Lackawanna and Bloomsburg Railroad was about 7 or 8 feet below the level of the lateral railroad and was laid on the only practicable grade at the point where it crossed the lateral railroad; that if the lateral railroad had been kept at its grade as theretofore used, the Lackawanna and Bloomsburg Railroad could not have been used for a locomotive railroad and the purposes for which it was chartered would have been defeated; that the Mammouth Vein Coal Company and the railroad company entered into an arrangement for enabling the railroad company to use their road for the purposes for which it was chartered, and that in pursuance thereof the lateral railroad was raised several feet higher than its original grade, but that the defendant had no control or authority in relation to it and that the lateral railroad was no otherwise altered than in the grade. The defendant denied that the lateral railroad had been disused since 1856 or that it had at any time been disused and suffered to remain out of repair, since he became lessee of Thomas, for two years or more; and denied that he or any one by his authority had constructed any railroad on Harvey's land other than upon the lateral railroad constructed by Thomas and upon the Lackawanna and Bloomsburg Railroad. The defendant further averred that in January 1860, his schute-house at the terminus of the lateral railroad at the Nanticoke pool was burned, and that owing to the before-mentioned obstruction of the navigation in the pool he had not rebuilt it, but intended to do so; that he had erected a coal-schute as mentioned in the bill and that the whole of the schute is upon land occupied and appropriated for the lateral railroad and the land taken and used by the Lackawanna and Bloomsburg Railroad; that it was erected by the consent and under the

authority of the railroad company, and is used for a coal-schute or coal-loading depot for the purpose of temporary deposits of coal taken from the mines and transported on the lateral railroad to the Lackawanna and Bloomsburg Railroad and unloaded into schutes in the building and thence in the ordinary way by gravity is loaded into the cars of the railroad company and transported to market; that he, the defendant, was out of possession of the premises about 28 months. The defendant further averred that in 1855 the Lackawanna and Bloomsburg Railroad Company appropriated a strip of land belonging to Harvey about 60 feet wide for the purposes of their railroad, and had used the same ever since for such purposes; that about the time the company took said land, a fence was erected above the schute-house along the line of the Lackawanna and Bloomsburg Railroad, on the south-easterly side, which was the boundary on that side of the land so appropriated; that the surface of the ground along this fence and between it and the north-western boundary of said strip of land is much lower than the grade of the road, and that for the last two years he had been employed by the railroad company in filling up and grading said strip for the purpose of laying a second track, sidings, &c., and that in doing this he had used culm, coal-dirt, &c., and had deposited and was depositing considerable quantities of it on the strip of land, which had been in the entire possession and control of the railroad company since 1855, and had not been since that time in the possession or under the control of Harvey.

The defendant denied that he had been depositing on the land of Harvey considerable quantities of coal, coal-dirt, &c., otherwise than was before set forth, and that when he had been in possession of the premises it always had been as lessee of Thomas.

A replication was filed and the case was referred to an examiner and master; much testimony was taken and many interlocutory proceedings were had. There did not appear to have been a report of a master finding the facts in the case.

On the 21st of January the Hon. John J. Pearson, President of the 12th Judicial District, holding a special court, filed an elaborate opinion of considerable length and decreed, that all the right of way in Lance, Thomas and all other claimants to the part of the lateral railroad between the Lackawanna and Bloomsburg Railroad and the termination at the Nanticoke pool had ceased and the same had reverted to Harvey, the owner of the soil; that all the lateral railroad which had been located and constructed and then remained outside of the 20 feet which the lateral railroad was authorized to occupy of the land of Harvey should be removed from his land; that the change of grade and construction of a new lateral railroad different from that granted to Thomas over land of Harvey was illegal and a violation of Har

vey's right, and should be removed and abated; that the coal-schute and screen, at the then termination of the lateral railroad, for the purpose of shipping coal from the lateral road upon the Lackawanna and Bloomsburg road, situate partly on Harvey's land, over which a right of way was claimed by the Lackawanna and Bloomsburg Railroad Company, within the 20 feet of the original lateral road and partly on land of Harvey without the 20 feet, should be removed and abated; that all the coal, slate and debris of any kind deposited by Lance or those claiming under him between the mouth of the mine and the northern line of the Lackawanna and Bloomsburg Railroad upon the land of Harvey outside of the 20 feet of the ground granted for building the lateral road should be removed; that all the coal, coal-dirt and debris of any kind deposited by Lance or any person under him upon Harvey's land outside the line of the Lackawanna and Bloomsburg Railroad Company's right of way, which was adjudged not to exceed 60 feet in width, should be removed, and that Lance should pay the costs of the whole proceeding; the decree not to prejudice the rights of Harvey to maintain an action against the Lackawanna and Bloomsburg Railroad Company, the Mammoth Vein Coal Company or Lance to recover damages, &c.

From this decree the defendant Lance appealed.

The errors assigned were, that the court erred in deciding :—

1. That any portion of the lateral railroad had reverted.

2. That any portion of the lateral road on Harvey's land was outside the 20 feet and should be removed.

3. That the grade was illegal.

4. That the railroad, as changed, must be removed by Lance.

5. That the coal-schute must be removed.

6. That Lance must remove the coal-dirt north of the Lackawanna and Bloomsburg Railroad.

7. That the coal-dirt, &c., on the south-east side of the Lackawanna and Bloomsburg Railroad must be removed, and especially in declaring the manner in which the location of the Lackawanna and Bloomsburg Railroad should be ascertained.

8. That the court erred in not sending an issue to a jury to ascertain disputed facts.

9. In entertaining a bill in equity as an appropriate remedy in the case.

*L. Hakes* and *O. Collins*, for appellant.

*H. W. Palmer*, for appellee, cited Dwarris on Stat. 750; Mayor of Allegheny *v.* Ohio and Pa. Railroad, 2 Casey 355; Packer *v.* Sunbury and Erie Railroad, 7 Harris 211; Reay *v.* Huntington, 4 East 285; Scales *v.* Pickering, 4 Bing. 452. Acts of May 5th, 1832, § 12, Pamph. L. 505; March 28th 1840,

[Lance's Appeal.]

§ 1, Pamph. L. 196, Purd. 848, pl. 62, 64; Mifflin *v.* Railroad, 4 Harris 194; Ridge Turnpike *v.* Stoever, 6 W. & S. 378; Lewis *v.* Jones, 1 Barr 336; Kemp *v.* London and Brighton Railroad, 1 Eng. Railroad Cases 374; Blackman *v.* Glamorganshire Canal Co., 1 Mylne and Craig 162; Queen *v.* East. Co. Railroad, 1 Eng. Railroad Cases 382; River Dun Nav. Co. *v.* London and B. Railroad, Id. 101; Head *v.* Providence Ins. Co., 2 Cranch 127; Dartmouth Coll. *v.* Woodward, 4 Wheat. 636; Beatty *v.* Knowler, 4 Pet. 152; Gossler *v.* Georgetown, 6 Wheat. 597; Sanderson *v.* Haverstick, 8 Barr 294; Feree *v.* Meily, 3 Yeates 153; Redfield on Railways 69, pl. 7–8; Skilton *v.* Webster, Brightly's R. 203; Bank of Ky. *v.* Schuylkill Bank, 1 Pars. R. 220; Bank of Va. *v.* Adams, Id. 534, 1 Troub. & H. 63, 64; Kerlin *v.* West, 1 Green's Ch. R. 449; Webb *v.* Manchester and L. Railroad, 1 Eng. Railroad Cases 576.

After argument the Supreme Court referred the cause and all the proofs and exhibits to C. L. Lamberton, Esq., as master in chancery, to find and report:—

1. Whether the lateral railroad was disused in 1856 or has been disused and suffered to remain out of repair since then for two years or more.

2. When the coal-schute was erected and by whose order and for whose use; whether it was necessary for shipping coal by the Lackawanna and Bloomsburg Railroad; whether it was erected on the 20 feet appropriated to the lateral road; whether it was wholly or partly within the 60 feet appropriated to the Lackawanna and Bloomsburg Railroad; how much, if any, extended beyond the 60 feet; whether the alignment and gradients of the lateral road from the mine to the schute are in substantial conformity to the decree establishing the road and are reasonably necessary and convenient for transporting and shipping coal.

3. How many square feet or perches of the complainant's land outside of the 20 feet appropriated to the lateral road and of the 60 feet appropriated to the Lackawanna and Bloomsburg Railroad, have been covered by coal, coal-dirt, &c., by the defendant, specifying the land and furnishing a draft of it; if the deposits have been successive with considerable intervals intervening, to fix the time of the several deposits and indicate upon the draft the height in feet and inches of the deposit; and, if necessary, to take further proofs.

The master reported:—

1. That the lateral railroad was altered by the lessees of Lance in 1856 in its gradients, from the line of Harvey's land to where it crosses the Lackawanna and Bloomsburg Railroad, the alignment being substantially the same; that the lateral road was changed from a descending to an ascending grade, the difference

where the old wagon-road was crossed being about 18 feet; that formerly the wagon-road crossed over the lateral road and now passed under it; that the lateral road was altered to accommodate the passage of the Lackawanna and Bloomsburg Railroad, and with some disadvantage to the operations upon it, and as altered, continued to be used for transporting coal from the tunnel to the pool at the Nanticoke dam until in January 1860, when the schute-house was burned, and that portion of the lateral road not occupied by the new schute-house, had been disused and suffered to remain out of repair for two years or more.

2. That in 1860 the building known as the coal-schute was erected by Lance for shipping coal on the Lackawanna and Bloomsburg Railroad, in constructing which the alignment of the lateral road, from a point named to the schute-house, was altered and the part so vacated has been disused, &c., for two years and more; that the new schute-house is partially within the 20 feet of the lateral road and the remainder within the 60 feet of the Lackawanna and Bloomsburg Railroad; that the gradients are an entire reversal of those of the lateral road as originally constructed, and that these changes at the time of the location of the Lackawanna and Bloomsburg Railroad and the burning of the old schute-house were reasonably necessary and convenient for transporting and shipping coal over the lateral road; that a new schute-house and breaker have been erected over the wagon-road and railroad about 65 feet from the tunnel; that the rails and many of the ties have been removed from the lateral railroad from that point to the schute-house; and that both it and the schute-house of 1860 are disused and out of repair.

3. That Lance obtained from the president of the Lackawanna road authority to grade additional tracks on the land appropriated for its right of way by depositing his refuse coal along the main track of the railroad at about 20 feet from it, and in so doing Lance embanked the coal-dirt, &c., against a fence erected by the company in the place of one of Harvey's, torn down by them; that the embankment caused the fence to give way, and it was removed, from time to time, to a distance of from 10 to 20 feet from where it stood, and this was part of the original fence diverged to unite with the schute-house; that at this point and below, the railroad is built along the base of the hill below the public road, which being above the other is supported by a wall; from this wall, including its width at the point where the fence originally was, is 59 feet to the fence on the lower side of the railroad; that at some points the fence is within the 60 feet and some places beyond it, pressed out by the coal-dirt embankment, some of which, but unimportant in quantity, has gone beyond the 60 feet; that the embankment made by Lance under the authority of the company is within the 60 feet; that 1165 cubic yards of

the embankment, since its construction, have been carried over Harvey's land below, which is attributable to insufficient culverts, causing floods to pass over the embankment; that a wall supporting the lateral road has given way, precipitating coal-debris into a public road, and a portion of this debris is deposited beyond the limits of the road; that there was a deposit of coal-debris on the site of the burned schute-house made by Lance before 1861, extending beyond the 20 feet of the lateral road and the 60 feet of the Lackawanna road; that after the erection of the new schute-house in 1860 a large mass of coal-debris was thrown from the end next the river, forming a pile which extended beyond the limits of the lateral road and the 60 feet of the Lackawanna Railroad; that the deposit, made during the existence of the schute-house which was burned, outside the limits of the 20 feet of the lateral road and of the 60 feet of the Lackawanna Railroad and along the schute-house for 55 feet is 25 feet in width, of an average height of 8 feet and contained 335 cubic yards; on the other side of the schute, beyond the above limits, the pile extended 45 feet of the width of 37 feet and of an average height of 8 feet, and contained 493 yards, altogether 828 yards, and having a superficial area of 2790 feet; that the pile outside the new schute-house, put there since 1860, extended beyond the same limits 87 feet in length, 35 feet in breadth and 8 feet in height, contained 902 cubic yards and had a superficial area of 3045 feet; the excess of deposit along the road was a strip of 380 feet long, 11 feet wide and 1 foot deep, contains 155 yards and has a superficial area of 480 feet. A draft was attached to the report.

Upon the coming in of the master's report no exceptions were filed to it and no further argument submitted.

The opinion of the court was delivered, May 13th 1867, by

THOMPSON, J.—In January 1865 a decree was made in this case by the learned judge of the 12th Judicial District, holding a special court, after hearing on bill, answer and proofs against the defendant, covering pretty much the entire ground claimed for relief by the plaintiff's bill; from which decree this appeal was taken by the defendant.

The learned judge filed with the decree an elaborate and able opinion, both on the law and the facts. But as the case had not been sifted by a master, we referred it to one appointed by us, with authority to report on the whole case; to take further testimony, if he deemed it essential to a full understanding of the controversy, to define as accurately as possible the area of plaintiff's ground covered by the dirt and debris from the defendant's mine, its depth and superficies, with an estimate of its amount in cubic yards, and to report to the court in banc at the ensuing October Term at Pittsburg. During that term the report was

accordingly made and filed, and the case submitted without argument on part of the appellant, printed or oral, and without filing any exception to the report, although in substance it did not materially differ from the facts which were found by the learned judge and which were the cause of the decree appealed from, nor have any exceptions ever been filed to the master's report.   However, notwithstanding these several findings of the learned judge, and afterwards of the master, we have also examined the testimony with care, and agree with them in all material points.   This being the result, we shall affirm the decree, with a single suggestion as to its execution, leaving that to be carried into effect by the court below, viz.:  That on compliance by the defendant with the decree in other particulars, he shall be allowed to enter a rule to show cause why that portion of it requiring the removal of the deposits of coal-dirt, slate, refuse coal and other materials made by the defendant and lessees or employees within the limits of the right of way of the Lackawanna and Bloomsburg Railroad, should not be annulled or modified.   If it be the bonâ fide intention of the railroad company to occupy and use it as the bed of a second track or siding of their road, it would not benefit the plaintiff to have it removed to be replaced by other material in order to lay such track, and an unnecessary expense to the defendant.   We will not, however, modify the decree in this particular at this time, but leave it to the court below to determine when the proper time arrives.   Their proximity to the scene of action will enable them intelligently to supervise and do right in the matter.

The right of the Commonwealth to take private property without the owner's assent on compensation made, or authorize it to be taken, exists in her sovereign right of eminent domain, and can never be lawfully exercised but for a public purpose—supposed and intended to benefit the public, either mediately or immediately.   The power arises out of that natural principle which teaches that private convenience must yield to the public wants. This public interest must lie at the basis of the exercise, or it would be confiscation and usurpation to exercise it.   This being the reason for the exercise of such a power, it requires no argument to prove that after the right has been exercised the use of the property must be held in accordance with and for the purposes which justified its taking.   Otherwise it would be a fraud on the owner, and an abuse of power.   Hence it is that no one can pretend that a railroad company may build private houses and mills, or erect machinery, not necessarily connected with the use of their franchise, within the limits of their right of way.   If it could, stores, taverns, shops, groceries and dwellings might be made to line the sides of the road outside of the track—a thing not to be thought of under the terms of the acquisition of the right of way.

The exercise of the right of eminent domain, whether directly by the state or its authorized grantee, is necessarily in derogation of private right, and the rule in that case is, that the authority is to be strictly construed: Dwarris on Stat. 750; 2 Casey 355; 3 Id. 339; 7 Harris 211. What is not granted is not to be exercised. When, therefore, the Lackawanna and Bloomsburg Railroad Company, under its charter, and the promoter of the private railroad under the Act of 1832, were authorized to take private property for the use of their roads, the rights they acquired were a right of way and facilities necessary to the efficient use of the right. They were not empowered to use the exclusive right of way granted to each for any other independent purpose than that for which it was granted. The fee remained in the private owner, and outside of the authorized use, which must be public or incidental to the public use, the proprietary right is in the original owner: 1 Barr 336; 8 Id. 294; 6 W. & S. 378; Redf. on Railways 69. Upon these principles, without further elaboration, we think the court were right in holding the defendant bound to remove the deposits of dirt placed by him or under his authority from both roads, and most assuredly from the ground covered by it outside of them.

We have before us the original petition and survey and the report of the jury for the private road in question; the former was for a road at grade, "or on the ground," excepting for the distance of 17 perches next the river; that to be raised from the ground on stilts. The jury of view appointed by the court reported in favor of the proposed road, as applied for and surveyed. That was a road on the surface—an inclined plane all the way. In 1856, the grade was entirely changed. In place of an inclined plane from the starting-point, at the tunnel, the incline was rather in the opposite direction. The road was elevated on stilts, or timbers, beginning a short distance from the tunnel and gradually rising from the ground until at its junction with the Lackawanna and Bloomsburg Railroad it was 18 to 20 feet above the old road, and on that structure a slope was erected from which to ship coal on that railroad. It was contended below that the defendant and his lessees had a right to take up the old road and reconstruct it in this manner. No authority for this was shown, nor can there be. The proceedings in the court at the outset, resulting in the grant of a right of way, was the charter for the road, and unless we disregard the act, there is no authority to do anything other than is provided therein. A survey is to accompany the petition for a private railroad. That shows what the petitioner asks liberty to do. The courses and distances, grades and the like, are to be laid down on the drafts, and if the road be allowed, that remains on file to define the rights acquired on the one hand and taken on the other. On

[Lance's Appeal.]

this proposed plan a view is granted and damages are assessed. It cannot be maintained, on any principle, that the right once granted on a proposed plan, the promoter may adopt any other. If he could, there is nothing to define his right or restrain his power, and he might pay trifling damages on one plan, and do infinite mischief to the owner of the land on another, without compensation. The whole act is against the assumption that the location as evidenced by the draft of survey and allowed by the jury may be disregarded at will. That proposition is incapable of maintenance for a moment.

Again, the original application was for a private road from the tunnel of the plaintiff in this proceeding to connect with the slackwater navigation at the river. Since 1856 this connection has been abandoned, and the connection changed to the Lackawanna and Bloomsburg Railroad, and the portion between that and the river permitted to fall into disuse. If we take into consideration, what is possible to have occurred when damages were originally assessed for the right of way for this road, that the advantages to the landowner in common with the public to pass over the road may have entered into the calculation, we perceive at once how great injustice might result from changing the road and its terminus, so as to render this impracticable. Nothing of this may have occurred, but it might, and may, if we yield the right to change the construction so as to change the location in point of fact at pleasure or according to the promptings of interest on part of the roadowner. The one party being irrevocably bound by a location which takes a portion of his property from him, the rule would be unjust which would permit the other to act in regard to it as he pleases. If the latter desires a different road than that which he has got, let him apply anew to the proper source of power for authority to make it. He will not get it otherwise.

Another object of preserving a survey of the road, as authorized, in addition to those already mentioned, was that the Commonwealth reserves the right to take such roads from the proprietors by paying their cost. If such a determination should occur in regard to a road situated as this, it would be a task of no little difficulty to identify it, and much greater to show any title to it.

I have not, nor did I intend to, elaborate a vindication of the able opinion of the learned judge below. It needs none, but simply to express our approval a little more specially than a mere assent to the results arrived at would do.

The decree of the court below is affirmed, to be executed as suggested, at the costs of the appellant.