137 P.2d 771

**WESTOVER v. HARRIS.**

No. 4744.

Supreme Court of New Mexico.

May 21, 1943.

Frazier & Quantius, of Roswell, for appellant.

E. E. Young, of Roswell, for appellee.

MABRY, Justice.

Plaintiff-appellant, Mallie Westover, brought suit against defendant-appellee, Elsie Harris, her daughter, seeking the

cancellation of a certain deed purporting to convey certain property in Chaves County, New Mexico. The complaint was based upon the contention that defendant had agreed with plaintiff, her mother, in consideration of the deed so conveying the property in question, that she would take care of and support plaintiff during the remainder of her life; that after the contract was entered into and after plaintiff had lived in the home with said daughter for a number of months defendant failed and refused to take care of, support and maintain plaintiff, as she had covenanted and agreed to do, and thereby breached her contract and agreement with plaintiff.

Plaintiff further urged in the court below, and here urges, that the instrument referred to by which the property in question was so conveyed was intended to be and was in fact nothing more than a testamentary disposition which plaintiff undertook to make of her property in question. It was, however, upon the theory that defendant, by her course of conduct toward plaintiff, had breached the contract to so keep and support plaintiff that counsel for plaintiff largely, though not entirely, relied in the court below. The deed was executed by plaintiff, recorded by her attorney at her direction, and later returned to her as requested. This deed plaintiff thereafter destroyed. Defendant contends that the deed constituted an actual conveyance of the property from her mother to her and was not subject to recall or cancellation. The trial judge gave judgment for defendant, holding the deed to be a deed in fact and not to represent an attempted testamentary disposition by plaintiff of her property, and plaintiff appeals.

The deed was a warranty, absolute in form except that it contained a clause reserving a life interest in the grantor, plaintiff. This clause reads: "Reserving, however, to the party of the first part a lifetime interest in the above described property, together with all rents, issues, and profits, and full possession and control thereof during the natural lifetime of the party of the first part."

The trial court made the following findings of fact, appellant's challenge going to findings numbered 4 and 7:

"1. That the Defendant, Elsie Harris, is the daughter of the Plaintiff and John Westover, Deceased; that at the time of the death of the said John Westover, the Plaintiff and the Deceased were separated and divorced.

"2. That by the terms of the Last Will and Testament of the said John Westover, Deceased, he devised and bequeathed a substantial portion of his estate to Florine Stevens, his daughter, and likewise a substantial portion of his estate to his son J. B. Westover; that the said Decedent, John Westover, left two other children, namely, Elsie Harris and Jay Westover.

"3. That on and prior to February 17th, 1940, the said J. B. Westover and the said Florence Stevens were indebted to the Plaintiff herein in the sums of $3,176.66 and $3,000.00 respectively.

"4. That on February 17th, 1940, Plaintiff made, executed and delivered to the Defendant Elsie Harris a deed to the property in question, thereby intending that the title thereto should then pass and become vested in the said Elsie Harris, and likewise on said date Plaintiff made, executed and delivered to her son, Jay Westover, a deed for a house and lot, which is not in litigation herein, reserving, however, a life estate in both properties, with the right to receive, collect and use all rents, issues and profits therefrom of any kind and character, arising or that which might be produced from the said properties for her own use and benefit.

"5. That since the execution and delivery of said deed the Plaintiff has had the exclusive and uninterrupted right to receive, and has received all of the rents, issues and profits from the said properties for her sole benefit.

"6. That there was no contract between the Plaintiff and the Defendant, as alleged in the complaint, by the terms of which the Defendant agreed to keep the Plaintiff for and during her natural life in consideration of the said conveyance. ·

"7. That some time subsequent to the time the deed was made by the Plaintiff to the Defendant, the Defendant went into the home of the Plaintiff and lived with the Plaintiff for some nine months, during which time the Defendant expended considerable sums of money in improving and repairing said property, in approximately the sum of $200.00.

"8. That no suit has been instituted by the Plaintiff against the said Jay Westover to cancel the deed to him.

"9. The Court further finds that the conveyances aforesaid were made by the Plaintiff for the purpose of equalizing, as nearly as possible, the amounts which her four children might receive from the estate of her deceased husband, John Westover, and her own estate.

"10. That the money involved in the second cause of action is the property of the Plaintiff, and was never intended to be or become the money of the Defendant, and that no trust was established between the Plaintiff and the Defendant concerning the said money."

Finding number 10 aforementioned goes to the second cause of action involved in the suit whereby plaintiff sought to and did recover of defendant $600 in money. The question with which this last finding deals will be hereafter noticed when we treat of the cross-appeal herein. Upon these findings the court concluded as a matter of law as follows:

"1. That the Defendant, Elsie Harris, is vested with the title to the real estate in question, subject only to the life estate of the Plaintiff.

"2. That Plaintiff is estopped from attempting to set aside said deed.

"3. That the Defendant has no right, title or interest in or to the postal certificates, and should assign the same to the Plaintiff.

"4. That judgment should be for Defendant on the first cause of action, and for the Plaintiff on the second cause of action.

"5. That the costs should be divided equally between the parties hereto."    .

The main question which this appeal presents is whether the trial court properly held the deed in question a deed in fact as distinguished from a testamentary document over which plaintiff would have control. If it be a will, rather than a deed absolute with the reservation of a life estate, obviously plaintiff would have full control over it and could have required its cancellation or destruction at any time.

■ We hold that there was evidence to support the court's findings that the document was executed as, and was at all times intended to be, a deed and not a will; and thus the conclusions of law based upon the findings were properly made. We do not feel that an exhaustive review of the evidence will be either necessary in explanation of our opinion or beneficial as an aid to the bench and bar, and hence we will touch upon the evidence rather superficially.

Even assuming appellant could, under the circumstances relied upon, by her oral testimony show the document was not intended as a deed but that it was a will, she did not use very apt language in her testimony to show such intention. Her own testimony, to say nothing of the contrary evidence, might fairly bear an interpretation which would support the court's finding; an interpretation that it was only after she had difficulty with her daughter that she "changed her mind" and wanted to cancel and destroy the deed which had been made without suggestion at the time that she reserved any such control.

It is deducible from all the testimony that appellant would have the deed considered a will, rather than a deed, only after she felt that her daughter had mistreated her. Up to the time of the break in relationship, and when all was going well, plaintiff herself testified that she wanted "to let it go like it was", but added that because of the treatment accorded her by the daughter thereafter, "I changed my mind—I had to have somebody live with me". Obviously plaintiff reasoned, after the difficulties arose, that she could, having possession of the deed, destroy it and that it would end the claim of defendant to the property.

■ In any event it cannot be said that the record discloses uncontradicted testimony that plaintiff intended this document to be a will and not a deed. If such a showing of intention at the time of executing the document is claimed because of plaintiff's effort to thereafter destroy it, an answer to this would be that such evidence would not necessarily support the claim that both plaintiff and defendant had such an understanding, or that it was likewise the intention of either when the document was executed and prior to the time plaintiff felt moved to so interpret it.

Methods employed to effect thereafter such a change, or a result, not in the mind of plaintiff at the time she executed the

deed, cannot be thus made the basis for determining the intention at the time of execution. There is not much to be found in the record which would justify a finding that plaintiff believed at the time of execution that she was making a revocable will; and there is ample evidence to support a contrary finding. The fact that plaintiff, after the execution of the deed instructed her attorney to place it of record, of itself clearly contradicts plaintiff's present claim that she never intended this as the absolute conveyance which it purports to be.

The direction that the deed be put of record was entitled to be considered by the trial court in arriving at its finding as to the intent as expressed in the deed itself. Even had the deed been kept from record and retained in possession of plaintiff, since there was a reservation of a life estate in the property with its possession and control, such retention of the deed would not have been inconsistent with the idea that a delivery was intended. 18 C.J., p. 201; 26 C.J.S., Deeds, § 42.

It seems a little inconsistent for plaintiff to argue, or imply, that she did not know the difference between a will and a deed, when it is stated that the deed was made after the execution of a will leaving the same property to the defendant for the reason that she wanted to make sure that her intention that defendant receive the property be not thwarted.

There is nothing to indicate that plaintiff was the ignorant, unlettered or uninformed person her counsel would now claim her to be; she had considerable experience in dealing with property; and there is much to support the theory that she, a natural mother, now in her declining years, and feeling that her daughter, the defendant, and her son Jay, were unequally dealt with in the disposition of property from their father's estate, now proposed, in the making of these separate conveyances to her said two children, to thus "equalize, as nearly as possible", the amounts which each of the four children should receive.

It appears from the record that plaintiff had accumulated and substantially preserved a fair sized estate; that she had had considerable experience in executing deeds and other conveyances. In any event there could not be, under the record before us, a presumption against the validity of the deed because of any mental weakness charged to the grantor.

Plaintiff makes a point of the testimony to the effect that plaintiff executed the deed to "re-inforce" the will. The trial court, as it could properly do, took this to mean, under the circumstances disclosed by the record and which may have created in plaintiff's mind a suspicion that something might go wrong with her previously executed will, that plaintiff was thus making certain that her benevolence could not be questioned or diverted through a controversy over the terms of her will when she made the deed.

Deeds are clothed with too much solemnity and finality to be lightly interpreted contrary to the clear language there-

of upon conflicting evidence as to the intention with which they were executed. We do not say that there is not in the record evidence which might support contrary findings to those made by the court. But the trial court having resolved the conflict in favor of defendant, we are bound thereby and will inquire no further.

Plaintiff's challenge to the court's refusal to make for her finding to the effect that she was at the time in question a very elderly woman in poor physical condition is without merit. The court refused to make this finding; but, conceding much that counsel for plaintiff contends for her, as to extreme age and sickness of plaintiff, and adding, even, the element of mental weakness, which is not claimed, still, she does not come within the universally applied rule which would, because of this condition alone, justify defeating or setting aside her agreements or conveyances. We applied the general rule in Morgan v. Thompson et al., 46 N.M. 282, 127 P.2d 1037, quoting in support of our holding from an abundance of authority.

The question whether defendant overpersuaded and over-reached plaintiff in securing the deed in question was resolved against plaintiff's contention. The court, likewise, resolved against her, upon a clear conflict of evidence, the evidentiary fact as to whether defendant mistreated her after the deed in question was executed. The question of undue influence exercised by defendant upon plaintiff was vigorously urged in the trial court, but plaintiff's requested finding upon this point was denied, and the findings of the ultimate facts clearly show the court resolved such issue against plaintiff.

Even if some portion of some finding, such as to when defendant went to live with plaintiff, as the date relates to the making of the deed, is found to be inaccurate and unsupported by the evidence, it cannot affect the result. That would be merely an unimportant variation between a finding and the evidence relied upon in support. The important query is whether the court was convinced by testimony of the defendant and her supporting evidence to the effect that the deed was to operate as a present conveyance, just as the language thereof provides, and that it was given, perhaps, "to equalize, a nearly as possible" the property which each of the four children should receive; and not as a condition that defendant would take care of and support plaintiff during the remainder of plaintiff's life, nor as a revocable testamentary document.

But the trial court, with substantial evidence in support, chose to find contrary to plaintiff's contention. We are not impressed with the suggestion that any such mistake by the trial judge as to the exact time the deed was executed would improperly influence the ultimate findings of fact or conclusions of law.

A like observation we apply to the suggestion that the trial court was confused as to how much of the $200 expended by defendant on improving the property in

question was expended before, and how much after, the execution of the deed. We are not persuaded that such error, if made, had any influence upon the findings of the ultimate and controlling fact. Whether defendant expended for painting and repairs half, as is probable, or all of the $200 mentioned, prior to securing a deed is of no great importance.

It is the intent which is expressed in the deed and not a secret intention of the party or parties existing at the time of execution which is controlling. 18 C.J. 252, 254, sec. 198; 26 C.J.S., Deeds, § 83. There can be no doubt that the document in question effected a present conveyance of the land, subject to the continued possession, use and enjoyment by plaintiff during her lifetime. Courts will give such instrument a construction that will uphold it, if possible. Pelt v. Dockery, 176 Ark. 418, 3 S.W.2d 62. See, also, McAlister v. Pritchard, 287 Mo. 494, 230 S.W. 66; Sutton et. al. v. Sutton et al., 141 Ark. 93, 216 S.W. 1052.

We have next the question raised by the cross-appeal, and this also was correctly resolved by the trial judge. There is involved in this the sum of $600, which cross-appellant claims was money given to her in trust by cross-appellee to preserve and use for expenses of appellee's last ill-ness and burial. Cross-appellee, the mother, on the other hand, contends that she turned this money over to her said daughter at a time when she was very sick and did not expect to get well. It was to be so used for expenses to be incurred in her last illness and for her burial, cross-appellee says, but it was to be returned if she should recover from that particular illness, and was not to be held beyond such time.

Cross-appellant does not claim any interest in the money. She feels that a trust has, under the circumstances, been established, and that it should not now be disturbed. There is a clear-cut and simple question here. Obviously, if cross-appellee's contention is correct, so that the money was to be returned to her when and if she recovered from the illness from which she was suffering at the time, and there is evidence to support the trial court's finding to that effect, the judgment upon this cross-appeal must be affirmed. We find there is substantial evidence to support such finding.

Finding no error the judgment of the trial court as to both the principal and cross-appeal should be affirmed, and it is so ordered.

SADLER, BICKLEY, and BRICE, JJ., concur.