378 P.2d 609

**Annie Wildy Lea GARRY and Ella Lea Dow, Plaintiffs-Appellees,**

v.

**The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a corporation, Waples-Platter Company, a corporation, Kimbell-Lubbock Company, a corporation, George J. Maloof & Company, a corporation, and A. B. Carpenter, an individual, Defendants-Appellants.**

No. 6940.

Supreme Court of New Mexico.

Feb. 8, 1963.

Bryan G. Johnson, Albuquerque, for appellants A. T. & S. F. Ry. Co., Waples-Platter Co., and Kimbell-Lubbock Co.

John P. Dwyer, Virgil L. Brown, Albuquerque, for appellant George J. Maloof & Co.

Carpenter, Phelps & Norwood, Roswell, for appellant A. B. Carpenter.

Neal, Neumann & Neal, Carlsbad, Wm. C. Schauer, Roswell, Thomas Lea Garry, Alhambra, Cal., for appellees.

MOISE, Justice.

In 1894 Joseph C. Lea and wife, by warranty deed duly recorded, conveyed a strip of land in the town of Roswell to James J. Hagerman. The deed contained the following language:

"This deed is made upon the express condition that the land above conveyed is occupied by the Pecos Valley Railway Company, or its successors for purposes and business of a railroad character or for the convenience of such company or its successors in handling its freight or other business or upon which to erect or permit erected such warehouses and yards as may be needed by its shippers and upon the express condition that if at any time it should cease to be used for such purposes then this conveyance shall become null and void and the property herein described shall at once revert to the grantors, their heirs or assigns."

It is a portion of this land that is here involved.

At the time of the deed, the railroad had not been built into Roswell. However, the town had by ordinance granted a right of way for the main line of the railroad on what had originally been platted as Grand Avenue, and the land covered by the deed lay adjacent thereto.

There is no controversy that the defendant-appellant, The Atchison, Topeka and Santa Fe Railway Company, hereinafter referred to as "Santa Fe" is the successor in interest of James J. Hagerman.

For some years after the railroad was built into Roswell, and at various times, the Santa Fe utilized portions of the property for an oil tank, coal house, tool house, coal chute, cinder pit and section house. However, in 1946 it made the first of a number of leases for warehouses to be built and operated on the property. Between 1946 and 1953, four such leases were executed, two to wholesale grocery concerns, one to a wholesale beer dealer, and one to a wholesale liquor dealer. A fifth lease was entered into after the suit and lis pendens were filed, and a warehouse was constructed by a firm that deals in bottled water from the Ozark Mountains. The lessees purchased the side track leading to the property leased by them.

In 1956, complaint for declaratory judgment was filed by plaintiffs-appellees, who are the sole heirs of Joseph C. Lea, deceased, and as such are successors in interest to the right of reversion quoted supra. The defendants are the Santa Fe and the holders of leases mentioned above. It was alleged that a controversy existed between the parties and that the Santa Fe had surrendered possession, occupancy and use of a major portion of the land covered by the conveyance, and that the same had ceased to be used for the purpose for which it had been conveyed, resulting in a reversion.

Plaintiffs state in their answer brief that their case "rests squarely upon their claim that the defendant Railway Company in leasing the property to the individual lessees for private business purposes" commit-

.ted "an act resulting in a reverter of that part of the land so leased." The trial court agreed with this position and entered a judgment holding that the leased properties had "ceased to be used for the purposes stated in the conveyance, * * * and that such conveyance had become null and void * * *" and that a reverter to plaintiffs had resulted. The defendants appeal from this decision.

The Santa Fe argues four points in its brief in chief, but inasmuch as we believe the appeal should be determined by considering the language of the deed we confine ourselves to a consideration of the first two points as argued.

Under these two points it is urged that the use for warehouses is a recognized and proper railroad use and that it is within the terms stated in the deed.

■ Let us first determine the rules applicable in considering the meaning of the language used. The general rule for the construction of deeds is to the effect that the intention of the parties is to be ascertained from the language employed, viewed in the light of the surrounding circumstances. Nickson v. Garry, 51 N.M. 100, 179 P.2d 524. Also, deeds are to be construed so as to uphold them if possible. Westover v. Harris, 47 N.M. 112, 137 P.2d 771. In Hoover v. Waggoman, 52 N.M. 371, 199 P.2d 991, it was held that, in construing restrictive covenants in deeds, effect is to be given to the intention of the parties as shown by the language used, considered with the circumstances of the transaction together with the object to be accomplished in making the restrictions.

■ A provision such as the one here being considered which, under certain circumstances, works a forfeiture, should be construed most strongly against the grantors or, in this case, against plaintiffs. Berger v. Santa Fe College, 28 N.M. 545, 215 P. 825; Rowe v. May, 44 N.M. 264, 101 P. 2d 391; Hart v. Northeastern N. M. Fair Assn., 58 N.M. 9, 265 P.2d 341.

Keeping in mind that the provision is to be construed and interpreted to avoid a forfeiture, if possible, we undertake an analysis of the language used. We find that the first express condition stated is that the land be "occupied" by the Santa Fe "for purposes and business of a railroad character or for convenience * * * in handling its freight or other business. * * *"

When it leased part of the property to private operators who were large shippers by rail because it was expected thereby to get additional freight business, did it abandon its occupancy for the stated purposes?

In Grand Trunk Railroad Company v. Richardson, 91 U.S. 454, 23 L.Ed. 356, it was held that the permissive erection of buildings on railroad property by private parties for convenience in delivering freight

was not inconsistent with railroad purposes. See, also, Missouri Pac. Ry. Co. v. State of Nebraska, 164 U.S. 403, 17 S.Ct. 130, 41 L.Ed. 489; Oregon Short Line R. Co. v. Ade County, D.C., 18 F.Supp. 842; aff'd 9 Cir., 97 F.2d 666, holding to like effect. In 94 A.L.R. 522, 535, in a note on the subject "Right of railroad company to use or grant use of land in a right of way for other than railroad purpose" it is stated that maintaining or permitting "the maintenance of warehouses on its right of way to be used in connection with, and for the convenience of, railroad traffic," is considered a railroad use and a number of cases are cited in support of the proposition. Additional cases appear in a supplemental note in 149 A.L.R. 378.

Plaintiffs, while asserting a conflict in the authorities, would evidently concede that under certain decisions it might be held that if the only question was one of whether the use being made was a railroad purpose, the holding might be otherwise. However, because of the presence of this language, " * * * or upon which to erect or permit erected such warehouses and yards as may be needed by its shippers," they argue that a different result must follow.

As we understand their argument, it is generally to the effect that since the erecting of warehouses is specifically mentioned it was not intended that use for "railroad purposes" would be enough. They then argue that the language used indicates an intention that by the use of the term "shippers" was meant the "general public" as shippers and not private individuals. The trial court was evidently persuaded by this argument as it found that the quoted language "applies to the general public as shippers and did not contemplate the use of said property by private enterprise to the exclusion of the general public." The proof upon which the court's findings were based being documentary, we are in as good position as the trial court to determine the facts and are not bound by the findings. Newbold v. Florance, 56 N.M. 284, 243 P. 2d 597; State ex rel. Reynolds v. Sharp, 66 N.M. 192, 344 P.2d 943.

We have given serious thought and consideration to the argument of plaintiffs, but are unable to agree with it. First, if it was intended to refer to the general public as distinguished from individual shippers, why wasn't apt language used to indicate this idea? It would have been simple and easy to express and yet we find nothing which could indicate such intention. Next, and more important, is the provision that they might "permit" warehouses to be erected as needed by its shippers. It would be an unusual type of business indeed which would deal with the general shipping public and would be interested in erection of a warehouse for use of the general public. Probably, even a privately operated public warehouse would not qualify. It seems to

us much more reasonable to believe that just exactly what was done here was intended, viz., leases to businesses which, because of the need to receive and ship by rail, desire a location adjacent to the railroad tracks, with service by a siding available for loading and unloading directly into their warehouses. Each of the lessees here involved is of this class and the leases were made in the expectation of increased freight business. Aside from the rule of strict construction against the grantor and to avoid a forfeiture, already noted, we are convinced that this is a more reasonable interpretation of the language used than is the one adopted by the trial court. Nothing in the record before us has been called to our attention which could be considered as indicating a contrary intention. It is suggested that the grantor, since he owned other properties adjacent to the right of way and which he could lease or sell to businesses to be used as warehouses could not have intended that the railroad compete with him in this regard. Concerning this argument, we can only say we have no evidence that this was his position and not one word appears in the record which indicates such intention on the part of the grantor.

Plaintiffs cite a number of cases holding that a variety of operations by various types of private enterprise are not railroad uses. We have considered these decisions and find them generally distinguishable. Some involved uses other than for warehouses.

Gulf Refining Company v. Dishroon, Tex. Civ.App., 13 S.W.2d 230; Bond v. Texas & P. Ry. Co., 181 La. 763, 160 So. 406; Hicks v. Thomson, 7 Cir., 127 F.2d 1001; Lance's Appeal, 55 Pa. 16, 93 Am.Dec. 722; some were injunction proceedings, Gulf Refining Company v. Dishroon, supra; Bond v. Texas & P. Ry. Co., supra; Wilczinski v. Louisville, N. O. & T. Ry. Co., 66 Miss. 595, 6 So. 709; or actions to abate a nuisance, City of Sturgeon v. Wabash Ry. Co., 223 Mo.App. 633, 17 S.W.2d 616; some related to land obtained through condemnation, Neitzel v. Spokane International Ry. Co., 65 Wash. 100, 117 P. 864, 36 L.R.A.,N.S., 522; Sparrow v. Dixie Leaf Tobacco Co., 232 N. C. 589, 61 S.E.2d 700, or easements, rather than ownership in fee, Bond v. Texas & P. Ry. Co., supra; Hicks v. Thomson, supra; Sparrow v. Dixie Leaf Tobacco Co., supra; Lance's Appeal, supra; some turned on the peculiar facts in the particular case, Wilczinski v. Louisville, N. O. & T. Ry. Co., supra; all are clearly distinguishable on their facts and in the terms of the grants which differ materially from that which we are construing.

Plaintiffs would have us read the provision so as to make the word "occupied" decisive. They argue that the condition of the deed requires that the land be "occupied by the Pecos Valley Railroad Company or its successors" for each of the purposes stated in the reservation, viz., (a) "for purposes and business of a railroad character,"

or (b) "for the convenience of such company * * * in handling its freight or other business," or (c) "upon which to erect or permit erected such warehouses and yards as may be needed by its shippers."

There are at least two good answers to this argument. First, something different must have been intended as between (b) and (c) above. The interpretation urged by plaintiffs would make (c) practically meaningless, in view of the fact that (b) provides sufficiently for occupancy for the company's convenience in handling freight. However, even more convincing in our view is the presence in (c) of the words "permit erected." In addition to what we have already said on this point, it is thus made clear that third parties would do the erecting. This being true, we cannot conceive that the grantors could have had anything in mind different from what the railroad here undertook to do. In a sense, the railroad still "occupies" the property in that it retains the fee, and under the terms of its leases could retake actual possession upon relatively short notice. Thereby, the use of the premises for the advantage of the railroad in its freight business was assured. We do not consider that the term "occupy"

was intended to be given such limited application as to mean that the property be occupied exclusively by the grantee, and the evident intention that others than the railroad would erect the warehouses or yards makes this clear. Compare United States v. Arredondo, 6 Pet. 691, 31 U.S. 691, 743, 8 L.Ed. 547; Docking v. Holley, 120 Kan. 344, 243 P. 286.

It follows from what has been said that there has been no breach of the covenant in the making of the leases for the purposes and under the circumstances here complained about, and the trial court erred in determining otherwise and holding that a forfeiture had ensued.

In view of our disposition of the principal appeal, it is not necessary for us to consider or discuss the appeal of the defendant, George J. Maloof & Company, from the action of the trial court in dismissing his cross-claim and counter-claim.

The cause is reversed and remanded with instructions to proceed in a manner consistent herewith.

It is so ordered.

CARMODY and NOBLE, JJ., concur.