## Winger, Appellant, v. Aires.

Argued April 15, 1952. Before DREW, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Paul A. Mueller,* with him *Ralph M. Barley,* for appellants.

*John L. Hamaker,* with him *J. Marlin Shreiner,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, June 24, 1952:

In 1947 the School Board of the Borough of Ephrata, which has 8,000 inhabitants, 2 elementary schools and a high school, ordered a school census for the purpose of determining its future school building requirements. From this census it was calculated that by the beginning of the 1952-53 term, another school building containing three rooms for three grades and accommodating from 60 to 65 students would be required. For the 1953-54 term 3 more rooms would be needed.

On July 10, 1950, the School Board met and decided to purchase the land of the plaintiffs, known as the Winger Farm, for the school building intended, and to this end offered the owners of the farm, the plaintiffs in this case, $22,500, which the plaintiffs declined. On December 4, 1950, the School Board met again in this matter and adopted a resolution authorizing the acquisition by condemnation proceedings of the property in question, which embraced 54.894 acres.

The plaintiffs filed a bill of complaint in the Lancaster County Court of Common Pleas for an injunction restraining the School Directors of the School District of the Borough of Ephrata and the School District of the Borough of Ephrata, more conveniently referred to herein as the School Board, from initiating eminent domain proceedings against the Winger Farm. The Bill of Complaint was dismissed and an appeal to this Court followed.

The Public School Code of 1949, P. L. 30, Art. VII, sec. 703 (24 P.S. sec. 7-703) provides inter alia that:

". . . the board of school directors of each district is hereby vested with the necessary power and authority to acquire, in the name of the district, by . . . condemnation . . . any and all such real estate, either vacant or occupied, . . . as the board of school directors may deem necessary to furnish suitable sites for proper school purposes for said district. . ."

The appellants do not question, and indeed cannot question, that the School Board has the power by this statute and under the Constitution of the Commonwealth itself, to take private property for school building purposes. They do, however, challenge the extent of that power, and properly so. There is no authority under our form of government that is unlimited. The genius of our democracy springs from the bedrock foundation on which rests the proposition that office is held by no one whose orders, commands or directives are not subject to review. The power of eminent domain, next to that of conscription of man power for war, is the most awesome grant of power under the law of the land. Article 1, Section 10 of our Pennsylvania Constitution, declares: ". . . nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured."

It is to be emphasized, however, that the restriction in this clause is not *limited* to the guarantee of just compensation. The condemnation may not take place at all without authority of law.

Did the School Board of Ephrata have authority of law to take 55 acres of land for a school building which would accommodate 65 pupils?

Although the Board here proceeded vigorously in the assumed interests of the people of the borough, the zeal exercised in the execution of its duties was as excessive

as its knowledge of the law applicable to the situation was lacking.

One witness testified, for instance, that the vice president of the Board said that the Board could take more land than it needed for the school building and then sell what remained over. Obviously no school board can, even in this indirect fashion, go into the real estate business.

The record shows quite clearly that the Board moved precipitately and without adequate preparation for the exercise of so solemn a power as that of eminent domain. No definite plans had been formulated as to the use to be made of the 55 acres. Although the Board knew that so vast an acreage could swallow up one building and many more, no specifications as to the proposed building had yet been indicated; no architect had been retained, and no surveys of the property had been made. Nor had any definitive location on the tract been designated for the intended structure. A bond issue of $150,000 had been approved at the election of November, 1950, for the purpose of purchasing land and constructing a school building, but no estimate of construction costs was yet available.

The darkness in which the directors moved in this most serious business of condemnation of private property was further evidenced by the fact that, although it was generally admitted 55 acres was excessive acreage for the public use intended, the directors were prepared to condemn 71 acres for that purpose had they known the plaintiffs owned an additional tract of 16 acres, title to which was not recorded at the time. Director R. Y. Grube testified: "Q. Would you have voted for that resolution if you had known there was an additional 16 acres, I am talking about the condemnation resolution? A. I don't think anyone knew. Q. Would you have voted for all of the farm? A. I would have. Q. To

take 71½ acres? A. I would have, *you can never get too much land."*. (Italics supplied) This statement was made despite the general knowledge that the City of Lancaster had constructed a school building of 22 class-rooms, administrative offices, health and music depart-ments, library, gymnasium, locker and shower rooms, club room, lunch room, kitchen and auditorium on a plot of land covering only *12 acres.*

The members of the Ephrata School Board envisaged a vaguely formed program for the future which would encompass additional rooms to the building to be erected, a junior high school and a football field. But there was no money in the treasury or even in thought for such a program. The Lancaster School Building hereinbefore referred to cost *$850,000.*

The State Council of Education had approved the condemnation of the 55 acre tract, but this is no evidence of necessity for the condemnation since, as Dr. Bow-man, who had been with the Department of Education for 33 years and now occupies an important post in that department, testified, the Council never denied approval of a site because it was too large. He further stated that the minimum requirement established by the State Council of Education as to the size of school sites for elementary schools was two acres for a two-room school and one additional acre for each additional fifty students, and that he would have approved the erection of the Ephrata proposed school on a *10 acre tract.*

Although there is a presumption that school direc-tors perform discretionary acts in the interests of public welfare and that their decisions have been reached by the exercise of intelligent judgment and in a legal man-ner after suitable investigation (*Hibbs v. Arensberg,* 276 Pa. 24, 119 A. 727), the evidence in this case over-comes that presumption and leads inevitably to the conclusion that the action of the School Board of

Ephrata constituted an abuse of discretion in its exercise of the power of eminent domain.

It was very early held by this Court in *Lance's Appeal,* 55 Pa. 16, 25, that: "The right of the Commonwealth to take private property without the owner's assent on compensation made, or authorize it to be taken, exists in her sovereign right of eminent domain, and can never be lawfully exercised but for a public purpose—supposed and intended to benefit the public, either mediately or immediately. The power arises out of the natural principle which teaches that private convenience must yield to the public wants. This public interest must lie at the basis of the exercise, or it would be confiscation and usurpation to exercise it. This being the reason for the exercise of such a power, it requires no argument to prove that after the right has been exercised the use of the property must be held in accordance with and for the purposes which justified its taking. Otherwise it would be a fraud on the owner, and an abuse of power. . . . The exercise of the right of eminent domain, whether directly by the state or its authorized grantee, is necessarily in derogation of private right, and the rule in that case is, that the authority is to be strictly construed: Dwarris on Stat. 750; 2 Casey 355; 3 Id. 339; 7 Harris 711. What is not granted is not to be exercised.

In the celebrated case of *Pennsylvania Mutual Life Ins. Co. v. Philadelphia,* 242 Pa. 47, 56, 88 A. 904, this Court declared unconstitutional an Act of the General Assembly which empowered the City of Philadelphia to condemn certain lands which it could then resell to private persons with certain easement conditions. Justice MESTREZAT, speaking for the Court, said: "Holding, as we do, that the use to be made of property located outside a public highway is not a public use for which private property may be taken by the city against

the consent of the owner, the effect of the Act of 1907 authorizing the appropriation of property for such purpose is to permit by the exercise of eminent domain the taking of the property of one citizen without his consent and vesting the title thereto in another. No court in this country has yet sanctioned such action by the State or its representative exercising the power of eminent domain."

What the Legislature cannot do, *a fortiori* a school district may not do.

This decision is not intended to restrict the defendants in taking such action, not inconsistent with this opinion, as may be necessary to meet the needs of the School District of the Borough of Ephrata.

Decree reversed, costs to be paid by appellees.

————

CONCURRING OPINION BY MR. JUSTICE ALLEN M. STEARNE:

This bill in equity was brought by the owners of a tract of land in Lancaster County seeking to enjoin the School Directors of the Borough of Ephrata from making any use of the land pursuant to a resolution condemning it for school purposes. The learned court below found that the School Board had acted properly within its discretion in condemning the land and dismissed the bill. This appeal followed.

I agree that the action of the School Board cannot be sustained, but my reason for so deciding is entirely different from that stated in the majority opinion. I am in full accord with the following statement in the opinion of the learned court below: "The power to select school sites is vested by the legislature in the school districts, and their judgment in the matter will not be disturbed unless there is a well-founded abuse of dis-

cretion: Lamb v. Reading, 234 Pa. 481 (1912); Hibbs et al v. Arensberg et al., 276 Pa. 24 (1923). [See also: *Campbell v. Bellevue Borough School District,* 328 Pa. 197, 202, 195 A. 53, and *Downing v. Erie City School District,* 360 Pa. 29, 34, 61 A. 2d 133.]

"In the instant case, the personnel of the defendant school board comprises a group of outstanding professional men, bankers and business men from the defendant school district. The testimony discloses that they made serious study and investigation before selecting plaintiffs' property for school purposes; that they had a survey made of the additional families, the increase in population, and the number of children of kindergarten age, taking into consideration the necessity of sufficient land for future expansion and deciding that the plaintiffs' land was the most practical location in proximity to the borough and its streets, and yet with little or no hazardous traffic conditions. The vote was by a majority vote of all of the members of the board. The site was approved by the County Board and by the State Council of Education; and the survey made revealed that it is desirable because of its geographical location in that it is well related to the community to be served for future expansion, and is readily accessible to all pupils who are to attend the school to be constructed on it."

It requires a clear showing of abuse of discretion to justify setting aside the judgment of the School Board, the State Council of Education, and the Court of Common Pleas of the County in which the School District lies. It is not an abuse of discretion for the School Board to select the most suitable tract of land for its purposes and then purchase or condemn such land as a tract without computing the precise acreage which is required. Such mathematical accuracy in the determination of the area of ground required for school

purposes is neither necessary nor desirable. In the present case, such a procedure might have resulted in leaving the property owners possessed only of useless scraps around the border of the tract after the heart of their land had been carved out and taken from them. Each member of the School Board testified to the pressing need for expansion of the facilities of this School District which had been made the subject of careful study by the Board. They referred to an enlarged elementary school, a proposed junior high school, a playground, and an athletic field. All of these are "proper school purposes" within the meaning of the Act of March 10, 1949, P. L. 30, sec. 703, 24 PS 7-703, from which the School District derives its power of condemnation. Had the School Board condemned the land "for proper school purposes", I would be of the opinion that they had acted within the limits of their discretion in so doing even though they could not at the moment present detailed plans describing the use to which each acre of the tract would be put. We should not declare illegal foresightedness in providing for future expansion.

The weakness of the Board's position lies in the narrow wording of the condemnation resolution which purported to "condemn for the purpose of erecting thereon and furnishing and equipping of an *elementary school building* for the School District . . ." (emphasis supplied). It is well-settled that the exercise of the power of eminent domain is always construed strictly against the condemnor: *Lance's Appeal*, 55 Pa. 16, 26; *Lazarus v. Morris*, 212 Pa. 128, 131, 61 A. 815. The condemnation must be for a public purpose (*Belovsky v. Redevelopment Authority of Philadelphia*, 357 Pa. 329, 54 A. 2d 277), and if the land is not used for the public purpose for which it was taken it reverts to the original owner: *Lazarus v. Morris*, supra; *Citizens*

*Electric Co. v. Susquehanna Boom Co.*, 270 Pa. 517, 113 A. 559; *Wentz v. Philadelphia*, 301 Pa. 261, 271, 151 A. 883. It is for this reason that there is no merit in the argument of appellants that the School Board proposes to resell whatever portion of this land it does not require for school purposes. The School Board would be without power to make such a sale. Should they attempt to do so, ownership of the land would revert to the complainants. Since the evidence utterly fails to support any theory that the entire tract of land condemned is required for an *elementary* school building, the resolution of condemnation must be held ineffective. Such resolution was not broad enough in terms to embrace all the proposed uses.

For this reason, and for this reason alone, I concur in the decree of reversal.

Mr. Justice JONES joins in this concurrence.