# The American Oil Company v. School District of Philadelphia et al.

Before Oliver, P. J., Crumlish and Sloane, JJ.

Crumlish, J., dissents.

*Harry Polish*, for plaintiff.

*C. Brewster Rhoads* and *Edward B. Soken*, for School District of Philadelphia, members of the Board of Public Education, and Add B. Anderson, defendants.

*Thomas G. B. Ebert, Frederic L. Ballard, Jr.*, and *Hamilton C. Conner, Jr.*, for PTC and Motor Real Estate Company, defendants.

*I. Edward Master*, for Paul F. Newman, defendant-owner.

OLIVER, P. J., September 1, 1954.—This is an action in equity to enjoin the School District of Philadelphia from exercising its power of condemnation with respect to a certain parcel of land, part of which has

been leased to plaintiff. The matter is before us on plaintiff's motion for judgment on the pleadings.

Involved are two vacant pieces of land, one owned by defendant PTC, referred to in the pleadings and hereinafter as land S, and the other owned by defendant Paul F. Newman and leased in part to plaintiff, and referred to as land X. The exact description of the two tracts is set forth in the record. For our purpose it is necessary only to state that both are fairly large tracts of ground in the northeast section of Philadelphia. Land S is directly across the street from a PTC bus depot, and is used by the latter as a parking lot for buses under a temporary permit from the city. Title is in the name of Motor Real Estate Company, a subsidiary of PTC.

A new school is required in that section of the city, and the school board, in attempting to solve that problem, decided that land S (the PTC parking lot) would afford the most desirable location for the school. However, because condemnation of that land would create a problem as to parking facilities for the buses, the board and the PTC agreed (and this is openly admitted in the answer) that the board would condemn land X (leased to plaintiff) and thereafter exchange it for land S, which would then be used as a site for the proposed school building and playground. In the board's own words:

". . . the purpose of the acquisition of land X by the School District of Philadelphia is to exchange it for land S in order to construct a school building on land S."

If such an exchange cannot be made, the board continues, then the school building will be constructed on land X.

Plaintiff's position is that the condemnation by the School District of land X for the purpose of turning it over to the PTC, in an exchange, is a condemnation

for a private use and consequently beyond the power of the school district. Plaintiff contends such a condemnation is contrary to positive law and should be restrained.

The board's position is that the proposed exchange would be "in the best interests of the public". It argues that this is really only one "package" transaction, and that it has authority under the law to carry out the proposed arrangement. The board alleges direct condemnation of land S would not be "possible nor feasible", and it argues that the contemplated action would be justified "from the standpoint of the interests of the public to be served thereby, the interests of local residents and all interests involved".

It should be noted here that the PTC claims the board could not condemn its property, but a reading of section 721 of the Public School Code of March 10, 1949, P. L. 30, 24 PS §7-721, leads us to the opposite conclusion.

It is basic that equity has jurisdiction in a case such as this, and will intervene to restrain acts of municipal authorities which are contrary to positive law or amount to bad faith or a violation of public duty: Downing v. Erie City School District et al., 360 Pa. 29, 33.

There are two main questions to be answered in deciding this case. First, what is the law of Pennsylvania as to the power of a school board to condemn property? And secondly, if the board is here attempting to exceed its power, is the proper remedy, under the facts of this case, judgment for plaintiff on the pleadings? Tied in with and closely related to the second problem is another question, and that is whether, since the board has admitted land S would be the better school site, it is not thereby precluded, on that basis alone, from condemning land X.

In determining what we believe to be the law of Pennsylvania we shall consider, first, the statute under which the school board purports to act and, secondly,

the decisions of our courts in interpreting and applying that statute.

The board, in condemning the land for school purposes, is proceeding under the Act of March 10, 1949, P. L. 30, sec. 703, 24 PS §7-703. The title to that section of the act is, "Acquisition of sites *for school buildings and playgrounds,* and disposing thereof." The board is authorized, under that section, to ". . . acquire, . . . by . . . condemnation, . . . any and all such real estate, . . . as the board of school directors may deem necessary *to furnish suitable sites for proper school purposes . . .* or to enlarge the grounds of any school property . . . and to sell, convey, transfer, dispose of, or abandon the same . . ." (Italics supplied.)

The board's power to condemn stems from the above act of the legislature. It can have no more power than that which the legislature gave it. It is axiomatic that the power of eminent domain, being in derogation of private rights, must spring from statutory enaction: Palmer Water Co. v. Lehighton Water Supply Co., 280 Pa. 492 (1924). What is not granted is not to be exercised: Lance's Appeal, 55 Pa. 16 (1867). See also Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 58, 46 PS §558.

What power, then, has the legislature given the board by the above act? It is apparent from a reading of the entire act that the right to condemn *land* is to do so merely as part of the broad plan to set up an operating school. Article VII of the act, under which the board derives its right of condemnation, is headed "Grounds *and Buildings*". Subsection 701 provides that the board has the duty to provide grounds *and buildings;* subsection 702 states that the amount of land needed is within the discretion of the board, but it also provides that no *building* shall be erected without a playground; and subsection 703, quoted above

in part, which refers in its title to "acquisition of sites *for school buildings and playgrounds*," allows condemnation to furnish suitable *sites* for proper school purposes. We conclude that the board has power to acquire land only as a *site* for school purposes, and that the parking of PTC buses would not be a school purpose. The obvious intent of the legislature was to give the board power to acquire land upon which to build a school building or other school facility or apparatus, but the board cannot, even in a limited way, go into the real estate business. A "site" is defined in Webster's International Dictionary as "the place where anything is; position; posture, the seat or scene of any specified thing." No school building and nothing incidental thereto would be constructed on this location. The "specified thing" in this instance would not be a school building, only parked buses.

It is apparent, then, without even considering the court decisions on the point, that the plain language of the statute gives the board no such power as it purports to exercise in this case.

The courts have uniformly adhered to the above principles and an analysis of their decisions demonstrates that there is no support for the so-called "package deal" which the board advocates. It is the board's position that, since the acquisition of plaintiff's land is all part of one plan to erect a school, the condemnation is proper. We cannot agree. No Pennsylvania cases have been brought to our attention which support such a theory, and those cases outside the jurisdiction which were cited by the board are distinguishable on the facts or the law, and involved different statutes and different problems.

First of all, as pointed out above, it must be remembered that the statute here involved must be strictly construed. With that thought in mind, let us examine some Pennsylvania cases.

The classic case in this area is Lance's Appeal, supra, which sets forth the basic proposition that the exercise of the right of eminent domain is in derogation of private right, and that the authority must be construed strictly. In that case the court held that, where a railroad acquired a right-of-way, it was not empowered to use the exclusive right-of-way granted *for any other independent purpose than that for which it was granted.*

The next case of importance is Pennsylvania Mutual Life Ins. Co. v. Philadelphia, 242 Pa. 47 (1913). Involved was the basic issue as to whether or not the power of eminent domain could be used in such manner as to have land condemned and then resold to private individuals. In that case our Supreme Court declared unconstitutional that part of an act which empowered cities to acquire land for parks, parkways and playgrounds, and to appropriate neighboring private property within 200 feet of the boundary line so taken, and to resell that neighboring property under such restrictions in the deeds as would properly protect the parkway. The true test, said the court, is not a general one of "public *benefit*, utility or advantage," but is rather "public *use*". That is, the constitutional provision in our jurisdiction, permitting the appropriation of private property for public use, contemplates *an actual use by the public.* The court said, at page 54:

"We think this interpretation of the word 'public use' is in accord with their plain and natural signification and with the weight of the best considered authorities. It furnishes a certain guide to the legislature as well as to the courts in appropriating private property for public use. It enables the state and the owner to determine directly their respective rights in the latter's property. If, however, public benefit, utility or advantage is to be the test of a public use

then, as suggested by the authorities, the right to condemn the property will not depend on a fixed standard by which the legislative and judicial departments of the government are to be guided, but upon the views of those who at the time are to determine the question. There will be no limit to the power of either the legislature or the courts to appropriate private property to public use except their individual opinions as to what is and what is not for the public advantage and utility. If such considerations are to prevail, the constitutional guarantees as to private property will be of small moment."

The application of the above principle to the present case is obvious. The school board claims, however, that two later cases decided by our Supreme Court have limited the scope of Pennsylvania Mutual Life Insurance Co. v. Philadelphia, supra, often referred to as the Parkway case.

In support of this proposition it cites Dornan v. Philadelphia Housing Authority et al., 331 Pa. 209 (1938), and Belovsky v. Redevelopment Authority, 357 Pa. 329 (1947). Those cases, however, actually support plaintiff's position, and not that of the board. They involved slum clearance, and the basic issue before the court was, again, whether land could be condemned and then resold to private individuals. The court held that it was proper to do so in slum clearance cases, since the *clearing of slums* constitutes a "public *use*" within the legal definition of that term. The only sensible result would be that, *after the public purpose has been accomplished*, the land can be disposed of. We cannot quarrel with that conclusion. It makes sense that the government may dispose of land no longer required for public use.

Indeed, the very act enabling the school board in the instant case to condemn land also authorizes the sale of such land when it is no longer needed. For

example, if a school building burns to the ground, and it is then found to be more advantageous to build somewhere else, perhaps due to a shift in the school population, the land may be sold.

Dornan v. Philadelphia Housing Authority, supra, actually relies on the Parkway case for the proposition that, to constitute a public use for which private property may be appropriated, there must be a use or right of use by the public. It is difficult to see how this *limits* the Parkway case. In Belovsky v. Redevelopment Authority, supra, the court reaffirmed the principles of the Dornan case, supra, and *distinguished* the Parkway case as a different problem, pointing out in the Parkway case aesthetic objectives were held not to be sufficient to justify the exercise of eminent domain, since such would not be a public use, whereas in the Belovsky case slum clearance in itself was a valid "public use". That statement does not hurt plaintiff's position. As a matter of fact, the court, in that same case, on page 340, makes the following statement in full accord with plaintiff's position:

"Nothing, of course, is better settled than that property cannot be taken by government without the owner's consent for the mere purpose of devoting it to the private use of another, even though there be involved in the transaction an incidental benefit to the public." Language more diametrically opposed to the board's "benefit to the public" argument would be difficult to find.

But if any doubt still existed as to the validity of Lance's Appeal, supra, and the Parkway case, or as to the status of the law in this area, our Supreme Court provided a definite and conclusive answer in Winger v. Aires, 371 Pa. 242 (1952). In that case, the first one decided subsequent to the 1949 Public School Code with which we are now dealing, the local school board condemned more land than was needed for the erection

of the school building. The Supreme Court held that the board's power of condemnation was limited to the taking of so much land *as was actually needed,* and would reasonably be used, *for school purposes;* and that it was definitely improper and unconstitutional to take more land than required, and then sell the unused portion.

In Winger v. Aires, supra, the Supreme Court cited, relied upon and quoted as controlling both Lance's Appeal, supra, and Pennsylvania Mutual Life Insurance Co. v. Philadelphia, supra. The gist of the *Winger* decision is that property taken by the power of eminent domain must be *taken* for a public purpose and must be *used for the purpose for which taken.* It is clear, then, that plaintiff has valid grounds for objecting to the taking of his property if it is simply to be turned over to the PTC, as we see from the following language of Winger v. Aires, supra, on page 247:

"It was very early held by this Court in *Lance's Appeal,* 55 Pa. 16, 25, that: 'The right of the Commonwealth to take private property without the owner's assent on compensation made, or authorize it to be taken, exists in her sovereign right of eminent domain, and can never be lawfully exercised but for a public purpose—supposed and intended to benefit the public, either mediately or immediately. The power arises out of the natural principle which teaches that private convenience must yield to the public wants. This public interest must lie at the basis of the exercise, or it would be confiscation and usurpation to exercise it. This being the reason for the exercise of such a power, it requires no argument to prove that *after the right has been exercised the use of the property must be held in accordance with and for the purposes which justified its taking.* Otherwise it would be a fraud on the owner, and an abuse of power. . . . The exercise of the right of eminent domain, whether

directly by the state or its authorized grantee, is necessarily in derogation of private right, and the rule in that case is, that the authority is to be strictly construed: . . .' " (Italics supplied.)

We will not permit the proposed abuse of power and fraud on the owner. If the board exercises its right of condemnation for *school* purposes, the property condemned *"must be held in accordance with and for the purposes which justified its taking."*

It is not necessary for us to discuss in further detail the cases cited in support of the board's position. Suffice it to say that, except for the two "slum clearance" cases, none of them involved Pennsylvania law, and most of them were Federal cases, where the courts were concerned with the broad right of eminent domain of the Federal Government, and not with a statute enabling a local school district to condemn sites for "school purposes", which, under our law, must be construed strictly.

We conclude, then, that the board has no power to carry out its proposed scheme of condemnation and exchange of property. The taking in this case would not be for school purposes, nor incidental to school purposes. It could not possibly be for such purposes, since the board plans to relinquish title immediately and would thereafter have no power or control over the land. See Pennsylvania Mutual Life Insurance Co. v. Philadelphia, supra, at page 55. Even it it were considered a "public use" to park buses on land X, the school board has no power to condemn for that purpose. We must again emphasize that the test to be applied here is *not* public use, benefit, utility or advantage. The State itself is not condemning the land. The board may take only for the very limited objective of furnishing "suitable sites for proper school purposes." After the property has been taken (and it must be taken for school purposes) it must be *used for such purposes*:

Winger v. Aires, supra. Indeed, while the question is not now before us, it is very likely that, if land X were condemned and *not* used for school purposes, plaintiff would have standing to sue in ejectment to regain the land, on the basis of Mr. Justice Stearne's statement from his concurring opinion in Winger v. Aires, supra, at page 250:

"The condemnation must be for a public purpose, . . . and if the land is not used for the public purpose for which it was taken it reverts to the original owner."

We turn now to the second problem of this case. We have decided that the board would be acting improperly in condemning land X in order to exchange it for land S. But the board claims it *will* build on land X if it cannot acquire land S. In addition, the board has *admitted* that land S would make the best school site. On that state of facts and pleadings may we grant summary judgment?

Under Equity Rule 1501 a motion for judgment on the pleadings is treated the same as in actions of assumpsit. This means that Pa. R. C. P. 1034 is applicable, and that when plaintiff here moves for summary judgment the averments of the answer must be taken as admitted: Lepore v. Italian Victory B. & L. Association, 171 Pa. Superior Ct. 35 (1952). Judgment on the pleadings may be entered only in a clear case, where there are no essential facts in dispute, and where the case is free from doubt: Vrabel v. Scholler, et al., 369 Pa. 235 (1952); Wood v. Collingdale Borough, 366 Pa. 624 (1951). Every doubt must be resolved against the entry of a motion for judgment on the pleadings: Murray v. Yoe, 170 Pa. Superior Ct. 348 (1952).

What, precisely, has defendant school board admitted? Paragraphs 6 and 12 of the answer are the crucial paragraphs. They admit that the resolution

condemning land X was passed January 15, 1954; they also admit that *before* passing the resolution the board considered *both* sites, and concluded that land S would be "more desirable". After alleging it is neither possible nor feasible for the board to acquire land S, the answer continues: "Accordingly, as the result of negotiations between these defendants and Philadelphia Transportation Company and Motor Real Estate Company, it was tentatively agreed that if the School District of Philadelphia acquires land X by purchase or condemnation and necessary permits or approvals are obtained to the zoning laws to permit the use of land X as a parking lot for buses of the Philadelphia Transportation Company, the School District of Philadelphia would exchange the said land X for land S, with the Philadelphia Transportation Company and Motor Real Estate Company. It is further averred that such acquisition of land X by the School District of Philadelphia and the exchange of land X for land S with defendant Philadelphia Transportation Company will be in the best interests of the public to be served by the proposed school building and to the best interests of all others concerned. It is further averred that if it should not be possible to make the said exchange and to construct the proposed school building on land S, the School District of Philadelphia is prepared to acquire land X by condemnation and to erect a school building thereon."

And paragraph 12 reads:

". . . On the contrary, it is averred that the purpose of the acquisition of land X by the School District of Philadelphia is to exchange it for land S in order to construct a school building on land S if such an exchange can be made, but that if such an exchange cannot be made, the School District of Philadelphia proposes to construct a school building on land X".

The answer of the board as contained in paragraphs 6 and 12 clearly indicates that the board proposes to acquire land X for the purpose of exchanging it for other land, and that it will make the exchange if possible. This is precisely what we have decided the board cannot do, for the statute under which the board derives its power of condemnation authorizes the taking of land for school purposes only, and not for exchange or resale.

Thus, if the admission that land S is better fitted for school purposes precludes, by itself, condemnation of land X, the board must be restrained absolutely from condemning land X; but if such admission does not have that effect, then the board must be enjoined only from taking land X to exchange it for land S or for any purpose other than erecting a school facility thereon.

Actually, what it comes to is a question of this court's power in regard to upsetting discretionary acts of the board. The question whether property is needed for school purposes or is *fitted* for such use is not for the court. It is an administrative matter, and, in the absence of fraud, the decision of the board is conclusive: Jury v. Wiest, 326 Pa. 554 (1937). We do not hold that the admission by the board, that land S would be the "more desirable" for its purposes, takes the matter outside of the board's discretion and thus precludes it from acquiring land X, providing it decided to take and use land X for school purposes. The board may eventually decide on either land X or land S. That is a problem for it to wrestle with.

Whatever it may decide in that regard, it is not for us to interfere, except to hold that one property cannot be condemned for the purpose of exchanging it for another property, or for any purpose other than to use it for school purposes.

Accordingly, the court grants plaintiff's motion for judgment on the pleadings, and enters the following order under Pa. R. C. P. 1034(b)

*Order*

1. Defendant School District of Philadelphia and its officers, and particularly defendants Walter Biddle Saul, president, and Add B. Anderson, secretary, of the board of public education are hereby perpetually enjoined and restrained from acquiring land X under section 703 of the Act of 1949, P. L. 30, art. VII, 24 PS §7-703, for the purpose of selling or exchanging said land to or with third parties; and particularly the PTC; provided, however, that defendant, School District of Philadelphia, and its officers, and particularly defendants Walter Biddle Saul, president, and Add B. Anderson, secretary, of Board of Public Education, are not precluded from in good faith acquiring and using that land for school purposes, and only for school purposes, under said section of the Act of 1949.

2. Defendant School District of Philadelphia is directed to pay the costs of these proceedings.

AMENDED ORDER

And now, to wit, September 9, 1954, the order of September 1, 1954, entered in this case is hereby amended to read as follows:

1. The resolution adopted by the Board of Public Education of the School District of Philadelphia on January 15, 1954, purporting to condemn land X for school purposes, is hereby declared null and void, and of no effect.

2. Defendant School District of Philadelphia, its officers, agents and employes are hereby perpetually enjoined and restrained from taking possession of land X, and from exercising any rights of ownership therein, pursuant to said resolution of January 15, 1954.

3. Defendant School District of Philadelphia and its officers, and particularly defendants, Walter Biddle Saul, president, and Add B. Anderson, secretary, of the board of public education are hereby perpetually enjoined and restrained from acquiring land X under section 703 of the Act of March 10, 1949, P. L. 30, art. VII, 24 PS §7-703, for the purpose of selling or exchanging said land to or with third parties, and particularly the PTC or Motor Real Estate Company, defendants herein.

4. Nothing in this order contained shall be construed as precluding or preventing the School District of Philadelphia at any time in the future from, in good faith, acquiring and using land X for school purposes, and only for school purposes, in accordance with the provisions of the Public School Code of March 10, 1949, P. L. 30, sec. 703, or the then existing applicable law.

5. Defendant, School District of Philadelphia, is directed to pay the costs of these proceedings.

### DISSENTING OPINION

CRUMLISH, J., September 1, 1954.—I am compelled to dissent from the order of my colleagues for the following reasons:

First, the record does not warrant an adjudication on the pleadings.

The School District of Philadelphia and Add B. Anderson, secretary, etc., defendants, hereinafter referred to as school district, aver affirmatively in the twelfth paragraph of their answer "On the contrary, it is averred that the purpose of the acquisition of land X by the School District of Philadelphia is to exchange it for land S in order to construct a school building on land S if such an exchange can be made, *but that if such an exchange cannot be made, the School District of Philadelphia proposes to construct a school build-*

*ing on land X."* (Italics supplied.) The school district's averment being in the alternative it may on trial decide to drop the plan of exchanging land X for land S and elect to condemn land X and to construct a school building thereon. If this should occur, the school district would have the right to so condemn land X and the question of its right to acquire land S by exchange would become moot. See Broido v. Kinneman, 375 Pa. 568 (1954).

Secondly, the equities of the parties can be balanced only after a full hearing on all questions involved.

Here we have an extraordinary situation and without precedent. The school district is seeking to accommodate the community by providing school facilities which will be adequate and safe in a section of the City of Philadelphia which has built up so rapidly within the last few years that finding a suitable site for a new school presents a serious problem. Defendants, PTC, and Motor Real Estate Company, allied corporations, serve the community by providing long-haul passenger transportation from this section of the city and in connection therewith require depot and parking accommodations for buses in that far-flung section in order to operate the transportation accommodations adequately.

Plaintiff corporation is the lessee of a portion of land X for a term of 10 years from April 30, 1953, with options to renew.

It is important to note that plaintiff acquired the lease of a portion of land X in 1953, when admittedly, from the complaint, the school board, in 1953, was considering the erection of a school in that general location, and was negotiating with PTC. Plaintiff avers the school board wanted land S; defendant school board answers that it originally planned to use land X, but at the request of local residents, undertook consideration of the acquisition of land S. The complaint

is silent as to plaintiff's use of the premises. While such averment is not incumbent upon plaintiff, it would shed light on plaintiff's good faith in securing this lease and bringing this action.

Under such circumstances, a chancellor should be especially careful to hear all the surrounding facts that bring plaintiff into court for equitable relief. The chancellor has a duty to determine whether such relief is sought in good faith before issuing an injunction.

In Messner v. Railway Co., 13 Pa. Superior Ct. 429 (1900) plaintiff alleged in his bill that his consent had not been obtained by an electric street railway company to build a road abutting his property, and asked that defendant be restrained from building the road. The court held, at page 438:

"In the light of the testimony, it is apparent that the plaintiff's principal purpose in purchasing this property was to harass the defendant company. The case as presented is marked with such questionable methods as to prevent the plaintiff from securing equitable relief."

Dual questions are raised here. Should defendants be restrained from proceeding in the best interests of the community and plaintiff prevail? Or, should plaintiff be confined to his remedy at law, and defendants be allowed to proceed? These two questions are dependent upon all the facts, and cannot be decided by relying on other authorities that dealt with the taking of property for school purposes where land for such purposes was plentiful or those authorities which limited condemnation under other circumstances. This is a case of first impression and strongly suggests the equitable principle of balancing the equities of the parties. See Heilman v. The Lebanon & Annville Street Railway Company, 175 Pa. 188 (1896).

Thirdly, this can very well be a case where the liberal principles of the Supreme Court of the United

States applied in United States ex rel. Tennessee Valley Authority v. Welch, 327 U. S. 546 (1946), may control.

When the proposed principle to exchange land X for land S is analyzed, it is not as arbitrary as it may at first seem. The school district has the right to condemn land X to secure a fee simple title. See Public School Code of March 10, 1949, P. L. 30, secs. 703 and 722, 24 PS §7-703, 7-722. Exercising this right and finding that it no longer has need for the ground it could sell and convey to anyone: Haldeman v. The Pennsylvania Central Railroad, 50 Pa. 425 (1865); Wyoming Coal & Transportation Co. v. Price, 81 Pa. 156 (1876); Foust v. Dreutlein, 237 Pa. 108 (1912); Dornan v. Philadelphia Housing Authority et al., 331 Pa. 209 (1938). Let us assume that the school district after condemnation concluded, in good faith, that the ground was not adequate or safely located for school purposes. Under the aforementioned authorities, having a fee simple title, it would be in a position to exchange land S for land X. Thus the package deal which the school district now has under consideration could be effected legally and plaintiff would be left to his remedy at law.

It was said in the course of the argument that if the school district needs land S it should proceed to acquire it by condemnation rather than by exchange. If the school district were to follow this suggestion, there would be nothing to prevent the street railway defendant from condemning land X for its purposes under the Act of June 1, 1907, P. L. 368, sec. 1, 67 PS §1221, and again plaintiff would be left to his remedy at law.

Finally, the problems involved are so numerous and complex, and the interests so varied and weighty, I feel, after viewing the locus in quo, they can be best resolved only after full hearing on the facts and exploration of the legal principles involved.