## Petition of Becker et ux.

*John Neal* and *Harold Patton*, for petitioners.

*Achey* and *Power*, for commission.

SATTERTHWAITE, J., May 27, 1955.—Disposition of this petition and rule requires the preliminary determination of this court's jurisdiction in the premises. Petitioners, the owners of three tracts of land, aggregating 8.04 acres in Bensalem Township, Bucks County, Pa., which were taken in the exercise of the power of eminent domain by the Pennsylvania Turnpike Commission, attempt to invoke the aid of this court in seeking the return of part thereof. The commission challenges our authority to entertain the proceedings.

The petition avers that a specified and allegedly substantial portion of one of the tracts taken was "neither necessary nor convenient for construction and efficient operation or maintenance of the turnpike nor necessary in the restoration or relocation of public or private property damaged or destroyed." After further averments relating to conferences between petitioners' counsel and representatives of the commission, it was also alleged that the taking of such part of the property "constitutes an abuse of the commission's discretion" and hence violated article I, sec. 10, of the Pennsylvania Constitution as well as the

fourteenth amendment to the Constitution of the United States, being a taking of private property without authority of law and not for a public use. The petition concluded with a request for a rule directed to the commission requiring it to show cause why it "should not vacate the aforesaid portion of petitioners' tract no. 3 and return said property to petitioners."

The court allowed a rule in the form as presented with the petition, in due course the commission filed an answer incorporating a motion for the discharge thereof on the ground that it was beyond the jurisdiction of this court to consider, being justiciable, if at all, only in the courts of Dauphin County.

This position is based on the fundamental proposition that the petition and rule, apart from any question of informality in the use thereof as original process, a matter not raised, in effect constitute an action in equity against an instrumentality of the Commonwealth, which in the exercise of the powers conferred upon it by appropriate enabling legislation must be deemed to be performing an essential governmental function: Section 4 of the Pennsylvania Turnpike Act of May 21, 1937, P. L. 774, 36 PS §652(d); section 5 of the Pennsylvania Turnpike Delaware River Extension Act of May 23, 1951, P. L. 335, 36 PS §658.5. Since the State is immune from suit except with its consent, it is argued that the Turnpike Commission is likewise entitled to such general immunity, qualified merely by section 6(c) of the Act of 1951, supra, 36 PS §658.6(c), authorizing suits against it in Dauphin County only.

For petitioners, on the other hand, several contentions are argued. Basically, they are all founded upon their own practical maneuver in the preparation of the form of the petition and the manner in which they caused it to be filed and docketed under what they now contend was an earlier pending proceeding.

Some 10 months prior to the filing of the petition, the Turnpike Commission had presented for this court's approval its bond to secure payment to "Stanley Q. and Freida F. Becker and/or Millard F. and Margaret E. Terry (lessee), as their respective interests may appear" for the appropriation of the three tracts of land in question. This procedure was required by section 10 of the Act of 1951, supra, 36 PS §658.10, as a condition precedent to the commission's right to possession of the land condemned, the owners and lessees affected having refused to accept such security. No objection to the bond having been made, despite notice, it was duly approved, and was docketed and filed by the prothonotary to May term 1953, no. 190, under the caption "The Pennsylvania Turnpike Commission v. Stanley Q. Becker and Freida F. Becker, his wife, and Millard F. Terry and Margaret E. Terry, his wife". No further proceedings have been taken thereon. Neither the owners nor the commission have applied for the appointment of viewers to determine the compensation payable for the land so condemned.

The present petition, executed by and presented on behalf of Mr. and Mrs. Becker only, was prepared under the caption "Stanley Q. Becker and Freida F. Becker, his wife, owners, and Millard F. Terry and Margaret E. Terry, his wife, lessees, v. The Pennsylvania Turnpike Commission" and was endorsed by counsel with the same term and number (May term, 1953, no. 190) as the bond so filed and approved.

By reason of such background, petitioners now contend that the petition is not an action at law or in equity against the commission, but is merely an ancillary step in a pending proceeding instituted in this court by the commission itself, which therefore, according to them, under certain express provisions of the Act of 1951, supra, as well as recognized common-law principles, cannot now avail of the privilege of

freedom from suit enjoyed by the Commonwealth even if such immunity generally be otherwise assumed.

We cannot agree with petitioners' arguments, whether or not the commission is entitled to the sovereign's immunity from suit, a question we do not decide. This petition, seeking affirmative relief, is most certainly in substance an action in equity against the commission by whatever name it may be labeled. Nothing either in the Act of 1951, supra, or in the other precedents relied upon, in the circumstances here presented, overrides the positive, unequivocal and controlling venue provision of section 6(c) of the Act of 1951, supra, which declares:

"(c) The commission may sue and be sued in its own name, plead and be impleaded: Provided, however, That any and all actions at law or in equity against the commission shall be brought only in the proper courts at the county of Dauphin."

Petitioners' reliance upon specific language in section 9 of the Act of 1951, supra, 36 PS §658.9, as superseding this general directive is unjustified, as is usually the case with quotations taken out of context. The full statutory language involved is as follows, the words emphasized being those which petitioners quote and upon which their argument is based:

". . . Prior to physical entry upon the land, the commission shall be under no obligation to accept and pay for any property condemned or any costs incidental to any condemnation proceedings: Provided, however, That *in any condemnation proceedings, the court having jurisdiction of the suit, action or proceeding may make such orders as may be just to the commission and to the owners of the property to be condemned,* and may require an undertaking or other security to secure such owners against any loss or damage by reason of the failure of the commission to enter upon, accept and pay for the property. . . ."

"*The commission, in its discretion, may vacate any portion or all of the land condemned either prior to or after physical entry upon the land or any part thereof and prior to final determination of damages. In such cases, the commission shall be under no obligation to accept and pay for any property condemned and subsequently vacated: Provided, however, That in any such case, the court having jurisdiction of the suit, action or proceeding may make such orders as may be just to the commission and to the owners of the property*, and may require an undertaking or other security to secure such owners against any and all loss or damages occasioned to the owner from the time of the original condemnation to the time of the modification thereof, . . .*"*

Far from being affirmative authority to establish our power to hear the prayer for relief now requested, these provisions not only have no application or relation to the matters herein presented, but also state no definitive or dispositive answer to the jurisdictional problem in any event. The words "the court having jurisdiction of the suit, action or proceeding" are inconclusive; it does not follow, as petitioners assume, that they necessarily and definitely refer only to the court of common pleas of the county wherein the land condemned is located. They would be just as consistent with the specific requirement of exclusive jurisdiction in Dauphin County. The mere fact that the local court is authorized by earlier provisions of section 9 to appoint viewers and to entertain proceedings supplementary thereto on exceptions or appeals from their reports on questions of compensation to the owners of the lands taken, does not determine the issue. The court referred to in the quoted provisions may or may not be the same, depending possibly upon how the questions therein provided for may arise. Be that as it may, and in any event, the statutory language in question is

concerned with situations where the commission does not follow up its condemnation action and either fails to take possession or *itself* totally or partially rescinds such action by vacating premises earlier appropriated. Since neither circumstance appears in this case, these excerpts constitute no authority for the within petition.

Petitioners' further contention that the Turnpike Commission has already invoked the jurisdiction of this court and therefore is amenable to matters of defense in the nature of recoupment for claims which grow out of the same transaction, under such cases as Commonwealth v. Berks County, 364 Pa. 447, is also unjustified. It is based on a false premise. There are no "condemnation proceedings" initiated by the commission pending in this court. The filing of the bond was not the effective act of taking. Rather, the commission's formal adoption of the eminent domain resolution itself, when approved by the Governor and the Department of Highways, constituted the legal appropriation of petitioners' premises: Lakewood Memorial Gardens, Inc., Appeal, 381 Pa. 46. With that, of course, this court had nothing to do, and hence the legally effective exercise of the power of condemnation was not accomplished by invoking or submitting to our jurisdiction.

Nor do we believe that either the filing of the bond in this court or the tactical move of counsel in filing the within petition under a reversed but otherwise identical caption and to the same term and number should alter this conclusion. The mere designation by section 10 of the Act of 1951 of the court of the county in which the land taken is situate as the mandatory repository or custodian of a physical piece of paper in the unusual case where tender thereof has been refused, would not seem to confer general jurisdiction of adverse proceedings against the commission, particularly when another section of the same act expressly limits such actions to

those brought in Dauphin County. The purely ministerial function of filing and safekeeping the bond, a purpose which might just as well be performed by a commercial bank or any public official having custodial facilities, even when coupled with the unopposed and perfunctory approval of the form thereof, cannot in any real sense constitute a resort to the judicial process. Moreover, compliance by the commission with the requirement of such filing, being compulsory, certainly cannot alone amount to a *voluntary* waiver of venue provisions it could otherwise insist upon. For these reasons, the precedents relied upon by petitioners have no application.

Petitioners still further contend that it would be illogical to require them to go to Dauphin County to determine the substantive question now raised and then return to this court for viewers' proceedings to ascertain the damages eventually due them for such of their property as is finally adjudicated to have been legally taken, and that the legislature must have intended to place all matters relating to the condemned property within the jurisdiction of the local court. They urge, for example, that the latter would be a more convenient tribunal to make a physical inspection of the property involved in order to determine whether or not a proper use was being made thereof by the commission. The short answer to this argument is that we simply do not find such intention in the appropriate statute. The legislature, to the contrary, has required that actions against the commission be brought only in Dauphin County.

Mere convenience of physical inspection would not be a controlling factor. It is apparent that other countervailing and even more important sound reasons of policy lie behind the mandatory venue requirements. The very question here raised, the alleged abuse of discretion by the commission, obviously would not be re-

solved by an inspection of the property. Undoubtedy, the determination of that subject would also involve consideration of such matters as planning, design, engineering data, executive decisions and many other such factors, most of which would depend upon files, records, minutes and other documents, available only at the commission's headquarters or upon the testimony of policy-making and high-ranking officials or employes constantly engaged in carrying out current functions there. Quite different problems of judgment and discretion would be involved than in the mere inquiry into questions of compensation for fixed and predetermined parcels of realty, the only matter clearly left to local courts. In short, the conduct of a State-wide enterprise of the magnitude of the Pennsylvania Turnpike ought not to be hampered by the enforced absence of possible key records or personnel while involved in protracted judicial proceedings in localities distant from its base of operations, unless such result clearly must obtain. Here, however, the appropriate statute definitely indicates a contrary legislative intention.

The within petition must therefore be dismissed and the rule granted thereon discharged on jurisdictional grounds. It therefore becomes unnecessary to express any opinion upon the substantive merits of the petition or the applicability of the principles enunciated in Winger v. Aires, 371 Pa. 242, relied upon by petitioners in this connection.

### Order

And now, May 27, 1955, for the reasons stated in the foregoing opinion, the petition of Stanley Q. Becker and Freida F. Becker, his wife, for the vacation and return of part of their property condemned by the Pennsylvania Turnpike Commission is hereby dismissed and the rule granted thereon discharged.