**In Re: CONDEMNATION NO. 2 BY the COMMONWEALTH of Pennsylvania acting by and through the DEPARTMENT OF GENERAL SERVICES, of certain land and improvements within an area bounded generally by 13th Street, Broad Street, Arch Street and Race Street for the purpose of expansion of the Pennsylvania Convention Center,**

**Appeal of: Ate Kays Company.**

Commonwealth Court of Pennsylvania.

Argued Oct. 30, 2007.

Decided Dec. 4, 2007.

Reargument Denied Feb. 1, 2008.

Marc E. Needles, David B. Snyder, and Christine Welsh, Philadelphia and John M. Elliott, Blue Bell, for appellant.

Nicholas J. Scafidi, Philadelphia, for appellee.

BEFORE: FRIEDMAN, Judge, and SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

In this consolidated appeal, Ate Kays Company (Condemnee) appeals from the July 2, 2007, and September 17, 2007, orders of the Court of Common Pleas of Philadelphia County (trial court). In the July 2, 2007, order, the trial court overruled Condemnee's Preliminary Objections

to the Declaration of Taking filed by the Commonwealth of Pennsylvania, acting by and through the Department of General Services, (Condemnor), condemning property located at 117–121 N. Broad Street in Philadelphia (Property) as part of the Pennsylvania Convention Center Expansion Project. In the September 17, 2007, order, the trial court granted the Petition for Writ of Possession filed by Condemnor. We affirm both orders.

In 1986, recognizing the public benefits that would result from the construction and operation of a convention center, the Pennsylvania General Assembly enacted The Pennsylvania Convention Center Authority Act (Convention Center Act),[1] now replaced by an amended act at 64 Pa.C.S. §§ 6001–6026. The Convention Center Act created the Pennsylvania Convention Center Authority (PCCA), a body corporate and politic, as an agency and public instrumentality of the Commonwealth and charged the PCCA with exercising the public powers of the Commonwealth for the essential public purpose of, *inter alia,* developing, designing, constructing, improving, maintaining and managing the Convention Center.[2] 64 Pa.C.S. §§ 6002(10), 6003, 6004 and 6006. As defined in the Convention Center Act, "Construction" includes "extension" and "enlargement" of the Convention Center as well as activities substantially related thereto. 64 Pa.C.S. § 6003.

Pursuant to this mandate, the PCCA directed construction of the current Convention Center, which opened in 1993, and following its success, considered the possibility of expanding the facility. Between 1997 and 2004, the PCCA conducted various studies with respect to the design, marketing and economic impact of an expanded Convention Center. Concurrently, the PCCA began meeting with community leaders, preservation groups and government officials, including state legislators, in order to inform them of the need to expand the Convention Center and to seek their support.

As part of its capital budget for public improvement projects, the General Assembly subsequently passed two appropriation bills, one for $400,000,000 in 2004 and a second for $300,000,000 in 2006, for the purpose of expanding the Convention Center (Project), including planning, *land acquisition* and construction. (R.R. at 208a, 254a.) As a result, the Department of General Services (DGS) had the statutory power and duty to implement the legislative appropriation, including acquiring the land necessary for the Project in the name of the Commonwealth. Section 2401.1(4) of the Administrative Code of 1929.[3] DGS,

---

1. Act of June 27, 1986, P.L. 267, *formerly* 53 P.S. §§ 16201–16224.

2. The General Assembly declared that "[t]he health, safety and general welfare of the people of this Commonwealth are directly dependent upon the continual encouragement, development, growth and expansion of business, industry, commerce and tourism within this Commonwealth." 64 Pa.C.S. § 6002(1). Further, the General Assembly found that the development and continuation of a convention center would help alleviate unemployment, attract business and tourism and benefit the hotel, restaurant and entertainment industries throughout the region where the convention center is located, 64 Pa.C.S. §§ 6002(2)-(6). Thus, the General Assembly recognized that the PCCA would exist and operate as a public instrumentality of the Commonwealth acting in furtherance of a public purpose for which public money may be spent, taxes may be imposed and private property may be acquired by the exercise of eminent domain power. 64 Pa.C.S. § 6002(10).

3. Act of April 9, 1929, P.L. 177, *as amended,* added by section 9 of the Act of July 22, 1975, P.L. 75. This provision sets forth the specific power and duty of the DGS "[t]o acquire land in the name of the Commonwealth by pur-

in turn, entered into an Agreement of Agency Designation with the Redevelopment Authority of the City of Philadelphia (RDA), designating the RDA as its agent in acquiring those properties.[4] (Ex. A–K 2, R.R. at 337a–66a.) Pursuant to express powers under the Eminent Domain Code (Code), 26 Pa.C.S. §§ 101–1106, Condemnor issued a Declaration of Taking on September 19, 2006, condemning the Property then owned by Condemnee for use in the Project, as authorized in the capital budget approved by the General Assembly.

On October 25, 2006, Condemnee filed Preliminary Objections (POs), challenging the validity of the Declaration of Taking on eight grounds. Specifically, Condemnee asserted that the condemnation is arbitrary and capricious and an abuse of discretion because: (1) there is no public need for the Project; (2) the condemnation is excessive; (3) Condemnor failed to consider the existence of Project alternatives; (4) Condemnor improperly delegated the decision as to which properties would be condemned; (5) Condemnor irrationally failed to condemn a similarly situated property; and (6–8) Condemnor failed to properly consider and make an informed judgment regarding the Property's location in a historic district, its architectural

significance and its contribution to the streetscape. (R.R. at 3a–10a.)

Condemnor filed its answer on November 14, 2006, and, following the parties' submission of further evidence and briefs, the trial court overruled Condemnee's POs by decision and order dated July 2, 2007.

■ On July 19, 2007, Condemnor filed a Petition for Writ of Possession pursuant to section 307(a)(1)(iv) of the Code, 26 Pa.C.S. § 307(a)(1)(iv), which the trial court granted by decision and order dated September 17, 2007.[5] Condemnee now appeals to this court from those orders.[6]

### I. Preliminary Objections

■ Section 306(a)(3) of the Code provides that preliminary objections shall be limited to and shall be the exclusive method of challenging: (i) the power or right of the condemnor to appropriate the condemned property unless it has been previously adjudicated; (ii) the sufficiency of the security; (iii) the declaration of taking; and (iv) any other procedure followed by the condemnor. 26 Pa.C.S. §§ 306(a)(3). Condemnee first argues that the trial court erred in overruling its POs because the decision to authorize the condemnation of the Property clearly was not valid. We

---

chase or eminent domain proceedings, in fee or in such right, title, interest or easement as the department may deem necessary for the project as specifically authorized in a capital budget...." 71 P.S. § 631.1(4). *See also* section 2402(f) of the Administrative Code of 1929, 71 P.S. § 632(f).

4. Section 6.1 of the Redevelopment Cooperation Law, Act of May 24, 1945, P.L. 982, added by section 2 of the Act of January 19, 1968, P.L. (1967) 987, 35 P.S. § 1746.1, states in pertinent part that the Commonwealth or any State public body by written agreement may designate a redevelopment authority as its agent within the authority's field of operation to perform any specified activity or to administer any specified program that the

Commonwealth is authorized to do in furtherance of the public purposes in the Urban Redevelopment Law (which includes expansion of the Convention Center).

5. By *per curiam* order dated October 11, 2007, this court denied Condemnee's motion for a stay from the trial court's order granting the Petition for Writ of Possession.

6. Our scope of review in eminent domain cases is limited to determining whether the trial court abused its discretion, whether an error of law was committed or whether the findings and conclusions are supported by sufficient evidence. *In re Condemnation of 30.60 Acres of Land,* 132 Pa.Cmwlth. 158, 572 A.2d 242 (1990).

disagree. After extensive review, we conclude that the trial court did not abuse its discretion, that it correctly applied the law and that the record fully supports the trial court's findings and conclusions with regard to Condemnor's eight POs. Accordingly, we adopt the trial court's opinion with respect to the specific issues raised therein.

However, we note that Condemnee's arguments on appeal do not parallel the statements in Condemnee's POs that were considered by the trial court. In its brief to this court, Condemnee essentially abandons most of its POs and limits its argument to a single issue: "whether the decision-maker conducted a 'suitable investigation' and made an 'intelligent, informed judgment' before it made 'the decision to condemn.'" (Condemnee's brief at 31.) Condemnee cites *Winger v. Aires*, 371 Pa. 242, 89 A.2d 521 (1952), and *In re School District of Pittsburgh, Allegheny County*, 430 Pa. 566, 244 A.2d 42 (1968) for the proposition that a condemnation is invalid unless the property is acquired after a suitable investigation leading to an intelligent, informed judgment. Condemnee then asserts that the sole "decision-maker" in this case is the General Assembly, and, relying on *In re Condemnation of 110 Washington Street*, 767 A.2d 1154 (Pa.Cmwlth.), *appeal denied*, 567 Pa. 748, 788 A.2d 379 (2001), Condemnee further argues that the General Assembly's responsibility to investigate and select properties for condemnation cannot be delegated.[7]

Condemnee contends that the General Assembly's only involvement in the Project was in providing funding and that there is nothing to show that the General Assembly conducted *any* investigation prior to appropriating that capital funding or that it made an informed judgment before authorizing condemnation of specific property for the Project. To the contrary, Condemnee maintains that, to the extent there was any investigation, it was conducted by the PCCA, not the General Assembly, and the results of that investigation were never communicated to the General Assembly. Condemnee further asserts that the PCCA and the RDA determined which properties to condemn, without consulting the General Assembly or providing it with a list of properties chosen for condemnation. According to Condemnee, where, as here, the General Assembly conducted *no* investigation of its own and received *no* information that could lead to an informed decision, its condemnation of the Property necessarily must fail.

However, the record demonstrates that the decision to expand the Convention Center and the determination of the properties that would need to be taken for that Project were made after many years of studies, planning and discussion. *More important*, Condemnee is ignoring the fact that Condemnor in this case is the Commonwealth, not just members of the General Assembly. The Commonwealth acts through the General Assembly and through the Commonwealth's various agencies, such as the PCCA, and its departments, such as the DGS. Each of these entities is part of the Commonwealth, and each performed its statutory obligation for the Commonwealth with respect to the Project.

7. Condemnee contends that, by appropriating funding for the Project, including land acquisition, the *General Assembly* authorized condemnation of all properties needed to implement the Project. Condemnee maintains that the *General Assembly,* therefore, had the obligation to conduct a "suitable investigation" and make an "informed, intelligent judgment" regarding the properties to be condemned and, as confirmed in discovery, the *General Assembly itself* did not do so.

The PCCA was created by the Commonwealth "as a public authority and instrumentality of the Commonwealth," which exercises the public powers of the Commonwealth as an agency for the purpose of developing, designing and constructing the Convention Center and for work related to the design, extension and enlargement of the Convention Center. 64 Pa.C.S. §§ 6003, 6004 and 6006(a). In this capacity and *under the statutory grant of authority, the PCCA undertook studies over a number of years to determine the need to expand the Convention Center and the best way to accomplish this.* Thereafter, the General Assembly, acting in accordance with its powers and responsibilities, passed legislation that appropriated funding for the Project. Ultimately, through its agency agreement with RDA, DGS selected the properties to be acquired for the Project and issued the Declaration of Taking in the name of the Commonwealth. *Pursuant to statute, DGS has the authority and the obligation to acquire by eminent domain all land necessary for projects specifically authorized in a capital budget.* 71 P.S. § 631.1(4). That is precisely what it did here, and Condemnee cites no authority for its position that the Commonwealth did not, and could not, act through these agents.[8]

None of the decisions cited by Condemnee lends support to its argument that, in order for this condemnation to be valid, every step of the proceeding, from investigation through condemnation, would have had to be undertaken by the General Assembly. In *Winger,* for example, the court held that a school board abused its discretion when it voted to acquire by eminent domain almost fifty-five acres of property for a school building that would accommodate only sixty-five pupils. The court characterized the school board's conduct as rebutting the "presumption ... [that the decisions of school directors] have been reached by the exercise of intelligent judgment and in a legal manner after suitable investigation." *Winger,* 371 Pa. at 246, 89 A.2d at 523 (citation omitted). The issue presented in *School District of Pittsburgh* was whether a school board's condemnation of land for off-street parking facilities was for a proper school purpose, as required by applicable law. After answering in the affirmative, the court in School District of Pittsburgh cited *Winger* and observed that unless property is acquired for an authorized public use, and after a suitable investigation leading to an intelligent informed judgment by the condemnor, the condemnation is invalid. However, in making this observation, the court was addressing the issue of whether the school district could acquire land for the purpose of future, as yet unplanned expansion. Thus, *Winger* and School District of Pittsburgh have no relevance to the issue of whether the Commonwealth can effectuate a condemnation through its statutorily designated agents. Similarly, we note that the decision in *Condemnation of 110 Washington Street,* wherein the court held that the power of eminent domain cannot be delegated to a *private entity,* has no bearing on this matter.

■ The burden of proving that the condemnor has abused its discretion is on the objector or condemnee, and that burden is a heavy one because, in such cases, there is a strong presumption that the condemnor has acted properly. *Appeal of Waite,* 163 Pa.Cmwlth. 283, 641 A.2d 25, *appeal denied,* 539 Pa. 657, 651 A.2d 543 (1994). In this case, we agree with the

---

8. Moreover, were we to agree with Condemnee's argument that the General Assembly itself must conduct all investigations and make each decision required for the numerous public projects it funds, the operation of state government would grind to a halt.

trial court that Condemnee has not offered sufficient evidence to carry its burden of proof.

## II. Writ of Possession

■ Condemnee also argues that the trial court erred in granting Condemnor's Petition for Writ of Possession while Condemnee's POs were pending on appeal. Condemnee characterizes Condemnor's Petition for Writ of Possession as a request for extraordinary relief and argues that the trial court erred and abused its discretion in granting possession of the Property to Condemnor before Condemnee's POs have been finally disposed of. We disagree.

The trial court granted Condemnor's Petition for Writ of Possession pursuant to section 307(a) of the Code, which provides, in relevant part:

(a) **Possession or right of entry of condemnor.**—

(1) (iv) The court, unless preliminary objections *warranting delay are pending,* may issue a writ of possession conditioned except as provided in this subsection upon payment to the condemnee or into court of the estimated just compensation and on any other terms as the court may direct.

(2) *A court may issue a writ of possession to a condemnor prior to the disposition of preliminary objections.*

. . .

(ii) If it is finally determined that any other condemnation is invalid after the granting of possession under this paragraph, the affected owners may recover costs and expenses under section 306(g)

(relating to preliminary objections) and are entitled to disposition under section 306(f).

26 Pa.C.S. § 307(a) (emphasis added). Relying on *West Whiteland Associates v. Department of Transportation,* 690 A.2d 1266 (Pa.Cmwlth.), *appeal denied,* 550 Pa. 714, 705 A.2d 1313 (1997), as a case that "addressed the types of preliminary objections that 'warrant delay,'" Condemnee argues that, because its POs "go to the very heart of the protections afforded by the United States and Pennsylvania Constitutions," (Condemnee's brief at 62), they are precisely the type of substantive POs that warrant delay. However, the issue in *West Whiteland* was whether a condemnee waived its right to contest the description of its condemned property when *it filed no preliminary objections* to the declaration of taking. Because this is not the issue before us, *West Whiteland* offers no guidance in this matter.

Condemnee also cites *Appeal of Conway,* 60 Pa.Cmwlth. 520, 432 A.2d 276 (1981), and *Condemnation Proceeding In Rem By The Redevelopment Authority of the City of Philadelphia,* 686 A.2d 453 (Pa.Cmwlth.1996), as holding that a writ of possession may not be issued in instances where a condemnee will not have an adequate remedy if it successfully challenges the condemnation. Condemnee points out that the Property contains a building of significant historic and architectural significance, which Condemnor plans to demolish after gaining possession of the Property. Condemnee reasons that, if it ultimately prevails, any post-demolition remedy will be insufficient as this building will be lost forever.[9]

---

9. In its Petition for Writ of Possession, Condemnor claims that it has an immediate need for the Property if it hopes to keep on schedule with the Project and avoid delay costs that could rise to an estimated $2,400,000 per

month. (R.R. at 467a–68a.) In response, Condemnee argues that it has a constitutional right to challenge the condemnation and should not be penalized for exercising that right. Moreover, Condemnee asserts that

Although Condemnee is correct that, once demolished, the building cannot be restored, we are not persuaded that the trial court abused its discretion by granting possession to Condemnor. Both *Appeal of Conway* and *Condemnation Proceeding* are distinguishable from the present matter. In each of those cases, the condemnee filed preliminary objections to a declaration of taking and raised issues that warranted an evidentiary hearing. However, in each case, the lower court denied the preliminary objections *without* establishing a record and *without* properly considering the substantive issues raised. As a result, *this court concluded that the lower court's dismissal of the preliminary objections was erroneous,* and we remanded so that the lower court could deal with those objections. In addition, we vacated the lower court's issuance of a writ of possession, explaining that, because the Code fails to provide redress for loss of possession in the event the condemnee successfully resists condemnation, the issuance of a writ of possession to a condemnor prior to the *proper* disposition of preliminary objections that challenge the validity of the condemnation would be constitutionally infirm. *Id.* In stark contrast to those cases, the trial court here fully disposed of all of Condemnee's POs based on an extensive evidentiary record, and we now affirm that determination.

Where, as here, the trial court properly determined that Condemnee failed to meet its heavy burden of showing that the condemnation of its Property was arbitrary, capricious or an abuse of discretion, we conclude that the trial court did not abuse its discretion in granting possession of the Property to Condemnor.

---

Condemnor is "crying wolf" with respect to increased construction costs, and, in any

Accordingly, we affirm the trial court's order overruling Condemnee's Preliminary Objections, and we also affirm the trial court's order granting Condemnor's Petition for Writ of Possession.

### ORDER

AND NOW, this 4th day of December, 2007, the orders of the Court of Common Pleas of Philadelphia County, dated July 2, 2007, and September 17, 2007, respectively, are hereby affirmed.

---

event, any purported hardship is entirely self-imposed.